FILED'04 JAN 08 11:19 USDC-ORM

**William F. Martson, Jr.,** OSB #72163
    E-Mail:     rick@tonkon.com
**Steven M. Wilker,** OSB # 91188
    E-Mail:     steven@tonkon.com
**Paul W. Conable,** OSB #97536
    E-Mail:     paul@tonkon.com
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR  97204-2099
Telephone:   (503) 221-1440
Facsimile:    (503) 274-8779

Attorneys for Plaintiff Portland General Electric Company

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF OREGON, ex rel HARDY MYERS, Attorney General for the State of Oregon, <br><br>                **PLAINTIFF,** <br><br> v. <br><br> PORTLAND GENERAL ELECTRIC COMPANY, <br><br>                **DEFENDANT.** | Civil No. _02·3002·HU_ <br><br> **NOTICE OF REMOVAL PURSUANT TO 16 U.S.C. § 825p and 28 U.S.C. §§ 1331, 1367, 1441, and 1446** <br><br> **By Defendant Portland General Electric Company** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

    PLEASE TAKE NOTICE that defendant Portland General Electric Company

("PGE") hereby removes this action pursuant to 28 U.S.C. § 1441 from the Circuit Court of the

State of Oregon for Multnomah County to the United States District Court for the District of

Oregon.

    1.     Defendant PGE is a party in a civil action brought against it in the Circuit

Court of the State of Oregon for Multnomah County entitled *State Of Oregon, ex rel. Hardy*

*Myers,  Attorney General for the State of Oregon v. Portland General Electric Company*, Case

Page 1 -    **NOTICE OF REMOVAL**

# 170580

1

No. 0312-13473. Copies of the initial pleadings are attached to this Notice as Exhibit A and constitute all process, pleadings and orders in this action to the present date to the best of defendant's knowledge.

2.     The state court action was commenced when plaintiffs filed a Motion for Order to Show Cause for Failure to Obey Civil Investigative Demand and Investigative Subpoena (ORS 646.626; ORS 166.730) and the Affidavit of Caren Rovics in Support of the Motion on December 16, 2003. An Order to Show Cause was entered by the Multnomah County Circuit Court at *ex parte* on December 16, 2003, setting the matter for hearing on January 9, 2003.

3.     Plaintiff served PGE by hand delivering copies of the moving papers to PGE's counsel at the *ex parte* hearing session on December 16, 2003. This Notice of Removal is filed within 30 days of PGE's counsel's receipt of the plaintiff's initial pleadings in this matter, as provided in 28 U.S.C. § 1446(b).

4.     This is a civil action in which plaintiff's claims arise under federal law. Jurisdiction lies in this Court under 16 U.S.C. § 825p and 28 U.S.C. § 1331 and 1367. This action may be removed by defendant under 28 U.S.C. §§ 1441 and 1446.

5.     Under the Federal Power Act ("FPA"), 16 U.S.C. §§ 824 *et seq.*, issues concerning the lawfulness of wholesale electric sales and trading activities arise under federal law. The FPA grants the Federal Energy Regulation Commission ("FERC") jurisdiction over every "sale of electric energy at wholesale in interstate commerce." 16 U.S.C. § 824(b)(1). The FPA grants to the "District Courts of the United States * * * exclusive jurisdiction * * * of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder." 16 U.S.C. § 825p.

6.     Plaintiffs' Motion seeks to enforce a Civil Investigative Demand ("CID") and an Investigative Subpoena, purportedly issued under state law, ORS 646.618 and 166.730. The CID and the Investigative Subpoena seek information and documents concerning interstate

Page 2 -    **NOTICE OF REMOVAL**

wholesale electricity trading by PGE and, particularly, matters that were the subject of an investigation at the FERC in FERC Docket No. EL02-114-006, concerning PGE's trading activities with Enron Power Marketing, Inc. ("EPMI"), including allegations that PGE violated its Code of Conduct, its market-based rate tariff, and/or FERC standards of conduct relating to the posting of transactions with an affiliate, by allegedly participating in improper transactions with EPMI ("the EPMI docket").

      7.    The interrogatories in the CID and the Investigative Subpoena seek information regarding: electricity trading (Int. No. 1), scheduling electricity (Int. No.2 ), real time transactions during the "17-days of transactions" (Int. No.3),[1] transmission scheduling for the "17-days of transactions" (Int. No. 4), a meeting where specific trading strategies and transactions were discussed (Int. No. 5), the decision to accept such transactions (Int. Nos. 6-7), the use of a particular account in scheduling such transactions which was identified in transcripts produced in the EPMI docket (Int. Nos. 8-9), a "Power Transactions" memorandum (Int. Nos. 10-12), certain employees and former employees of PGE allegedly involved in the transactions (Int. Nos. 13-15), PGE's wholesale revenues from energy trades with EPMI and marketers other than EPMI (Int. Nos. 16-17), record retention for emails and trader and transmission telephone calls (Int. Nos. 18-21), and posting of affiliate transactions, including the "17 days of transactions" (Int. Nos. 22-26).

      8.    The document requests in the CID and the Investigative Subpoena seek all documents related to the EPMI docket, including all documents subject to the protective order in the FERC proceeding and all testimony submitted in that proceeding (Req. Nos. 1-2). The requests also seek all documents: regarding posting of transactions between PGE and EPMI (Req. No. 3), identified in response to certain interrogatories (Req. Nos. 4-10), regarding agreements with and records of trades with power marketing affiliates, including EPMI (Req.

---

[1] The "17 days of transactions" refers to certain trading activities on 17 separate days in the period from April 6, 2000 to June 6, 2000 that were disclosed by PGE in response to a data request by FERC in May 2002.

Page 3 -   **NOTICE OF REMOVAL**

Nos. 11, 13-15), referring the meeting where specific trading strategies and transactions were discussed (Req. No. 12), relating to real time energy trading calls on certain dates in 2000 and 2001 (Req. No. 16), of emails between certain individuals for a three-year period from January 1, 1999 to December 31, 2001 (Req. Nos. 17-27), of cell phone records for a particular employee for the three-year period from January 1, 1999 to December 31, 2001 (Req. No. 28), identified by traders in certain call transcripts (Req. Nos. 29-32), relating to information sharing between PGE Merchants and PGE Trading (Req. No. 33), and the "PGE General Transmission Agreement" with BPA (Req. No. 34).

9.     Plaintiff's Motion and Affidavit demonstrate that plaintiff seeks to investigate matters concerning defendant PGE's alleged failure to comply with certain requirements of law. Although plaintiff does not state expressly the source of those "requirements," in fact, the requirements on PGE arise under its market-based rate tariff filed with and approved by the FERC and under the FERC's standards of conduct relating to the posting of transactions with an affiliate. Plaintiff cannot avoid the federal nature of its claims by failing to expressly plead an essential element of its claimed violation – that PGE allegedly violated its FERC approved tariff and FERC guidelines.

10.     The tariffs allegedly violated were filed with the FERC and govern transactions in markets operated by the California Independent System Operator ("Cal ISO") and the California Power Exchange ("Cal PX"). The FERC tariffs and guidelines are "rule[s], regulation[s], practices, or conduct affecting" transactions subject to FERC jurisdiction under the FPA. 16 U.S.C. § 824e(a); *In Re California Wholesale Electricity Antitrust Litigation*, 244 F. Supp. 2d 1072, 1075 (S.D. Cal. 2003) (ISO and PX filed tariffs with FERC and "[t]hese tariffs comprised the rules for trading in the California wholesale energy markets."). Hence, the claims herein arise under the FPA, 16 U.S.C. §§ 824 *et seq.*, and thus arise under federal law and may be removed to this Court under 16 U.S.C. § 825p and 28 U.S.C. §§ 1331 and 1441(b).

Page 4 -     **NOTICE OF REMOVAL**

11.    Even if the Motion did not on its face state federal claims, it seeks relief "partially predicated on a subject matter committed exclusively to federal jurisdiction" and removal is proper on that ground. *Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) ("*Sparta*"). Recognizing *Sparta* as controlling, two California district courts have denied remand of purported "state law" claims based on the exclusive jurisdiction provision of the Federal Power Act, 16 U.S.C. § 825p. *California ex rel Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1057-60 (N.D. Cal. 2003); *T&E Pastorino Nursery v. Duke Ener. Trading & Mktg., L.L.C.*, 268 F. Supp.2d 1240 (S.D. Cal. 2003).

12.    Plaintiffs' causes of action are also removable under the "artful pleading" doctrine described in *ARCO Environmental Remediation, L.L.C. v. Dep't of Health & Environmental Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000). First, the claims to enforce the CID and the Investigative Subpoena are "necessarily federal" because they seek information and documents regarding matters committed exclusively to the FERC under the FPA, and over which the District Courts of the United States have exclusive jurisdiction. *Id.*; *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998). Second, the claims "depend[ ] on the resolution of * * * substantial, disputed federal question[s]," namely whether the settlement of the EPMI docket as against PGE precludes plaintiff's investigation and whether the FPA itself preempts or precludes plaintiff's attempt to obtain documents and information concerning a subject matter that is committed to the exclusive regulatory jurisdiction of the FERC and the exclusive judicial jurisdiction of the United States District Courts. *ARCO*, 213 F.3d at 1114. Accordingly, removal is proper under 16 U.S.C. § 825p and 28 U.S.C. §§ 1331 and 1441(b).

13.    Plaintiff's claims are also removable here because the subject matter of interstate wholesale electricity trading that plaintiff seeks to investigate is completely preempted by the FPA as it relates to the documents and information sought by plaintiff and because there is a remedy available at the FERC and in the United States District Court to seek the regulation of wholesale trading activities such as those at issue here. In fact, plaintiff, on behalf of the Oregon

Page 5 -    **NOTICE OF REMOVAL**

Public Utility Commission participated in the EPMI docket and participated in the settlement of the allegations in that docket in exchange for a payment by PGE on behalf of its Oregon ratepayers. Thus, because the FPA completely preempts plaintiff's attempt to investigate and regulate PGE's interstate wholesale electricity trading activities and because the FPA provides for a displacing remedy, plaintiff's action arises (if at all) under the FPA, 16 U.S.C. §§ 824 *et seq.*, and thus arises under federal law and may be removed to this Court under 16 U.S.C. § 825p and 28 U.S.C. §§ 1331 and 1441(b).

14.    To the extent any issues of state law need to be resolved, jurisdiction over such issues or claims is proper here under 28 U.S.C. § 1367.

15.    Venue in this Court is proper under 28 U.S.C. § 1446(a).

16.    This Notice is signed pursuant to Fed. R. Civ. P. 11.

17.    Defendant PGE, through its undersigned counsel, hereby notices the removal of the above-entitled action now pending in the Circuit Court of the State of Oregon for Multnomah County to the United States District Court for the District of Oregon.

DATED this 8th day of January, 2004.

TONKON TORP LLP

By _____

William F. Martson, Jr., OSB #72163
  Direct Dial:   (503) 802-2005
  Direct Fax:   (503) 972-3705
  E-Mail:        rick@tonkon.com
Steven M. Wilker, OSB # 91188
  Direct Dial:   (503) 802-2040
  Direct Fax:   (503) 972-3740
  E-Mail:        steven@tonkon.com
Paul W. Conable, OSB #97536
  Direct Dial:   (503) 802-2188
  Direct Fax:   (503) 972-3888
  E-Mail:        paul@tonkon.com

Of Attorneys for Plaintiff
Portland General Electric Company

Certified to be a true and correct copy
of the original and of the whole thereof

Assistant Attorney General
of Attorneys for Plaintiff

1

2

3

4

5

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR MULTNOMAH COUNTY

6

7   STATE OF OREGON, ex rel HARDY MYERS,
    Attorney General for the State of Oregon,

8                  Plaintiff,

9       v.

10  PORTLAND GENERAL ELECTRIC
    COMPANY,

11                 Defendant.

Case No. 0312-13473

MOTION FOR ORDER TO SHOW CAUSE
FOR FAILURE TO OBEY CIVIL
INVESTIGATIVE DEMAND AND
INVESTIGATIVE SUBPOENA
[ORS 646.626; ORS 166.730]

12      Plaintiff State of Oregon moves the court for an order requiring defendant to appear and

13  show cause why defendant should not be compelled to comply with the Civil Investigative

14  Demand and Investigative Subpoena and for such other relief as the court deems just and proper.

15  In support of this motion, plaintiff states:

16                                    1.

17      Plaintiff Hardy Myers is the Attorney General of Oregon.  This proceeding is brought

18  pursuant to ORS 646.626 and ORS 166.730.

19                                    2.

20      Defendant is a corporation that trades in wholesale power Western Electricity Market and

21  did so during the period January 1, 1999 through December 31, 2001.

22

23  ///

24  ///

25

26  1 - MOTION FOR ORDER TO SHOW CAUSE FOR FAILURE TO OBEY CIVIL
       INVESTIGATIVE DEMAND AND INVESTIGATIVE SUBPOENA (ORS 646.626; ORS
       166.730)
       CEDF4844.DOC

Exhibit A - Page 1 of 46
Notice of Removal

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

1    3.

2    On or about November 7, 2003, Plaintiff executed and caused to be served upon

3    Defendant a Civil Investigative Demand (CID) and Investigative Demand pursuant to ORS

4    646.618 and 646.622, and ORS 166.730 in connection with an investigation into alleged

5    unlawful trade practices and violations of the Oregon Racketeer Influenced and Corruption Act

6    as more fully explained in the attached Affidavit of Caren Rovics, Oregon Department of Justice.

7    A full, true, and correct copy of the CID and Investigative Subpoena, with an Affidavit of

8    Service is attached hereto and by reference incorporated herein as Exhibits 1 and 2.

9    4.

10   Defendant has failed or refused to obey the above-mentioned Civil Investigative Demand

11   (CID) and Investigative Subpoena

12

13   5.

14

15   Relief Sought

16   Plaintiff requests an order as follows:

17       (a)    Compelling defendant PGE to comply with the requirements of the CID and the

18   Investigative Subpoena and answer interrogatories and provide the documents described.

19       (b)    Requiring that the defendant remain subject to the continuing jurisdiction and

20   control of this Court until the defendants have fully complied with all the requirements of the

21   CID and Investigative Subpoena.

22       (c)    Requiring that the defendant remain subject to the continuing jurisdiction and

23   control of this Court for the purpose of ensuring defendant PGE compliance with all future

24   lawful investigative demands of the Attorney General.

25

26   Page 2 -  MOTION FOR ORDER TO SHOW CAUSE FOR FAILURE TO OBEY CIVIL
         INVESTIGATIVE DEMAND AND INVESTIGATIVE SUBPOENA (ORS 646.626; ORS
         166.730)
         CRDF4944.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit A - Page 2 of 49
Notice of Removal

(d)     For such other and further Relief as this Court deems proper under the

1    circumstances.

2

3

4

5        DATED this _15_ day of _December_, 2003.

6                                              Respectfully submitted,

7                                              HARDY MYERS
8                                              Attorney General

9

10                                             Caren Rovics #90149
                                               Assistant Attorney General
11                                             Of Attorneys for Plaintiff
                                               Department of Justice
12                                             1162 Court Street
                                               Salem, OR  97310
13                                             Telephone:  (503) 378-4732

14

15

16

17

18

19

20

21

22

23

24

25

26   Page 3 -   MOTION FOR ORDER TO SHOW CAUSE FOR FAILURE TO OBEY CIVIL
                INVESTIGATIVE DEMAND AND INVESTIGATIVE SUBPOENA (ORS 646.626; ORS
                166.730)
     CEDF4844.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

1

2

3

4

5

6         IN THE CIRCUIT COURT OF THE STATE OF OREGON

7                 FOR MULTNOMAH COUNTY

8   STATE OF OREGON, ex rel HARDY MYERS,
Attorney General for the State of Oregon,

9                              Case No. **0312-13473**

10          Plaintiff,

                             AFFIDAVIT OF CAREN ROVICS IN

11     v.                         SUPPORT OF MOTION FOR ORDER TO
                             SHOW CAUSE TO COMPEL COMPLIANCE

12   PORTLAND GENERAL ELECTRIC,      WITH CIVIL INVESTIGATIVE DEMAND
                             AND INVESTIGATIVE SUBPOENA

13         Defendant.           (ORS 646.618; ORS 166.730)

14   STATE OF OREGON      )
                      ) ss.

15   County of Multnomah     )

16       I, Caren Rovics, being first duly sworn, depose and state:

17       1.     I am an Assistant Attorney General employed by the Oregon Department of

18  Justice (DOJ) and assigned to the Financial Fraud and Consumer Protection Section of the Civil

19  Enforcement Division.

20       2.     In the course of my official duties I have been assigned to review the activities of

21  Portland General Electric. (PGE)

22       3.     PGE is Oregon's largest utility, serving more than 730,000 customers in Portland,

23  Salem and nearby communities.

24       4.     During the period January 1, 1999 through December 31, 2001, PGE bought, sold

25  and exchanged electricity in the wholesale Western Energy Market.

26   Page 1 -    AFFIDAVIT OF CAREN ROVICS IN SUPPORT OF MOTION FOR ORDER
         TO SHOW CAUSE TO COMPEL COMPLIANCE WITH CIVIL INVESTIGATIVE
         DEMAND AND INVESTIGATIVE SUBPOENA
         (ORS 646.618; ORS 166.730)
           CR/cr /CEDF4856.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

5.     During the period January 1, 1999 through December 31, 2001 PGE was a wholly

owned subsidiary of Enron Corporation. (Enron)

6.     During the period January 1, 1999 through December 31, 2001 Enron, through its

wholly owned subsidiary Enron Power Marketing, Inc. (Enron Power) traded electricity in the

wholesale Western Energy Market.

7.     Because of its affiliate relationship with Enron Power, PGE was required to post

all transactions with Enron Power on its Internet web page.

8.     During January 1, 1999 and December 31, 2001 Enron Power engaged in energy

trading practices that included improper use of market power, market manipulation and

misrepresentations concerning its power trading services, among other trading services.

9.     One or more of these trading practices required Enron Power to secure the

participation of a counterparty. One of those of those counterparties was PGE.

10.     Public documents obtained by DOJ indicate that on at least 17 days in the Spring

of 2000 transactions involving PGE and Enron Power implicated the use of the "Death Star"

scheme.  PGE was a counterparty in these transactions.

11.     "Death Star" refers to a scheme employed by Enron to collect congestion relief

payments from the California Independent System Operator (CAISO) by circumventing

CAISO's prohibitions against scheduling power flow reversals and without actually relieving

congestion. In the scheme Enron Power would schedule a flow of power northbound from

California to Oregon with CAISO. Enron Power then used PGE in the north as a hub to wheel

the flow in a wide loop southbound back to California over power lines outside CAISO's control

area to make it appear as if the power was generated outside California.  PGE knew that power

Page 2 -     AFFIDAVIT OF CAREN ROVICS IN SUPPORT OF MOTION FOR ORDER
TO SHOW CAUSE TO COMPEL COMPLIANCE WITH CIVIL INVESTIGATIVE
DEMAND AND INVESTIGATIVE SUBPOENA
(ORS 646.618; ORS 166.730)
CR/cr /CEDF4856.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit A - Page 5 of 49
Notice of Removal

1   had to be delivered (consumed) north of the California border before power could be imported

2   back to California. Therefore, to avoid what PGE refers to a "complicated and confusing"

3   affiliate posting, PGE devised a scheme in which Enron would sell the northbound power to a

4   third party, Avista. PGE then bought the power from Avista and next, using PGE's transmission

5   rights through Oregon, PGE wheeled the power back to Enron to make it appear that the power

6   flowing south was generated by PGE. However, no additional power was generated or

7   consumed, no additional power flowed, and no congestion was relieved.

8
9   12.    By employing the "Death Star" scheme Enron Power was paid by the CAISO for

10  relieving congestion that never existed.

11  13.    Enron Power paid PGE for PGE's services to Enron Power in "Death Star"

12  transactions.

13  14.    Public documents obtained by DOJ indicate that during January 1, 1999 through

14  December 31, 2001 a total of 1,979 sales and purchases occurred between PGE and Enron

15  Power. Of those, only 689 – roughly one-third -- were properly posted on the PGE Internet web

16  page.

17
18  15.    The postings on the PGE's Internet web page were available to anyone with

19  Internet access.

20  16.    One purpose of the postings was the ensure that the public would be informed of

21  transactions between Enron Power and its affiliate PGE.

22
23  17.    PGE's participation in the "Death Star" scheme and its failure to post affiliate

24  transactions with Enron Power on its Internet web page as required by law appear to violate

25

26  Page 3 -    AFFIDAVIT OF CAREN ROVICS IN SUPPORT OF MOTION FOR ORDER
             TO SHOW CAUSE TO COMPEL COMPLIANCE WITH CIVIL INVESTIGATIVE
             DEMAND AND INVESTIGATIVE SUBPOENA
             (ORS 646.618; ORS 166.730)
             CR/er /CEDF4856.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit A - Page 6 of 49
Notice of Removal

1    provisions of the Unlawful Trade Practices Act[1] and Oregon's Racketeer Influenced and

2    Corruption Act.[2]

3        18.    On November 7, 2003 DOJ caused to be served upon PGE a Civil Investigative

4    Demand (CID), issued under ORS 646.618 for documentary material or physical evidence

5    relevant to alleged violations of the Unlawful Trade Practices Act (UTPA.  A copy of the CID

6    with proof of personal service is attached as Exhibit 1

7        19.    On November 7, 2003 DOJ caused to be served upon PGE an Investigative

8    Subpoena issued under ORS 166.730(1) a provision of the Oregon Racketeer Influenced and

9

10   Corruption Act that allows for the issuance of a subpoena for "documents or other material."  A

11   copy of the Investigative Subpoena, with proof of personal service, is attached as Exhibit 2.

12       20.    The CID and Investigative Subpoena seek information relating to PGE's trading

13   transactions in the Western Energy Market and posting of affiliate transactions on the PGE's

14   Internet web page covering the period January 1, 1999 through December 31, 2001.

15

16       21.    On November 26, 2003, PGE filed a Complaint for Declaratory Relief

17   (Complaint) (28 U.S.C. Section 2201) in the United States District Court for the District of

18   Oregon citing service upon PGE of the CID and Investigative Subpoena as ground of its

19   Complaint.

20       22.    The CID and Investigative Subpoena required PGE to respond to the

21   interrogatories and produce documents on or before December 1, 2003 to the Oregon

22   Department of Justice, Civil Enforcement Division, 1162 Court Street, NE, Salem, OR 97301.

23

24   [1] ORS 646.605-646.691

25

26   Page 4 -    AFFIDAVIT OF CAREN ROVICS IN SUPPORT OF MOTION FOR ORDER
             TO SHOW CAUSE TO COMPEL COMPLIANCE WITH CIVIL INVESTIGATIVE
             DEMAND AND INVESTIGATIVE SUBPOENA
             (ORS 646.618; ORS 166.730)
             CR/er /CEDF4856.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit A - Page 7 of 49
Notice of Removal

23.    To date PGE has failed to respond to the CID and Investigative Subpoena and did

not appear on or before December 1, 2003 to answer the interrogatories or produce documents as

required by the CID and Investigative Subpoena.

_____

Caren Rovics
Assistant Attorney General
Oregon Department of Justice

SUBSCRIBED AND SWORN TO before me this 15ᵗʰ day of December, 2003.

_____
Notary Public for Oregon
My Commission Expires May 23, 2007

```
OFFICIAL SEAL
LINDA L VAZQUEZ
NOTARY PUBLIC-OREGON
COMMISSION NO. 368280
MY COMMISSION EXPIRES MAY 23, 2007
```

[2] ORS 166.715-166.735

Page 5 -    AFFIDAVIT OF CAREN ROVICS IN SUPPORT OF MOTION FOR ORDER
TO SHOW CAUSE TO COMPEL COMPLIANCE WITH CIVIL INVESTIGATIVE
DEMAND AND INVESTIGATIVE SUBPOENA
(ORS 646.618; ORS 166.730)
CR/cr /CEDF4856.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit A - Page 8 of 49
Notice of Removal

Certified to be a true copy
of the original

1          DEPARTMENT OF JUSTICE

2          STATE OF OREGON

3   IN THE MATTER OF:

4                                     INVESTIGATIVE DEMAND
(646.618)

5   PORTLAND GENERAL ELECTRIC        UNLAWFUL TRADE PRACTICES
    COMPANY

6

7   TO:     Portland General Electric Company
          C/o David A. Aamodt, Registered Agent
          121 SW Salmon Street, Ste. 1300

8           Portland, OR 97204

9   GREETINGS:

10       The Oregon Department of Justice has reason to believe that Portland General Electric

11   Company (PGE), and other persons or enterprises, has engaged in or is engaging in, acts or

12   practices declared to be unlawful by the Oregon Unlawful Trades Practices Act, ORS 646.605

13   et. Seq.  This Civil Investigative Demand is issued pursuant to the provisions of ORS

14   646.618(1).

15

16     **Response to Interrogatories and Document Production Required**

17       On or before **December 1, 2003**, you are required by law to respond to the

18   interrogatories and document production described herein.  Please provide the requested

19   information to: Oregon Department of Justice, Civil Enforcement Division, 1162 Court Street

20   NE, Salem, OR 97301, Attn: Caren Rovics, Assistant Attorney General.  Or you may email

21   your response and documents to caren.rovics@doj.state.or.

22

23                        **DEFINITIONS**

24       "AND" and "OR" shall be construed either disjunctively or conjunctively as necessary

25   to bring within the scope of the request all responses that might otherwise be construed to be

26   outside the scope.

Page 1 – CIVIL INVESTIGATIVE DEMAND(ORS 646.618)
        UNLAWFUL TRADE PRACTICES

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR 97310
Phone: (503) 378-4732

Exhibit ___1___   Page ___1___

1      "ANY" shall be construed as synonymous with every and shall be all inclusive.

2      "ALL E-MAILS" means e-mails addressed to, and copied to, a recipient.

3      "BONNEVILLE POWER ADMINISTRATION" (BPA) is the federal agency, under

4   the U.S. Department of Energy, that markets wholesale electrical power and operates and

5   markets transmission services in the Pacific Northwest.

6      "CONTROL AREA OPERATION" (Transmission Scheduler) means PGE employee

7   scheduling energy on the Western Energy Market during January 1, 1999 and December 31,

8   2001.

9      "DEATH STAR TRANSACTION" means submission of energy transactions by PGE

10  submission by PGE Energy Traders and Transmission Schedules implementing transactions on

11  the AC Intertie between the California-Oregon Boarder (COB) and John Day, involving a buy-

12  resell transaction between PGE and EMPI and using Avista Utilities (Washington Water Power

13  or WWP as a sleeve.)

14     FEDERAL ENERGY REGULATORY COMMISSION DOCKET NO. EL02-114-000

15  (FERC) means *In the Matter of Portland General Electric Company, Enron Power Marketing,*

16  *Inc.*

17     FEDERAL ENERGY REGULATORY COMMISSION DOCKET NO. PA02-2-000

18  (FERC) means *FERC Factfinding Investigation Docket No. PA02-2-000.*

19     IDENTIFY means to provide a statement of:

20     a.  in the case of a person other than a natural person, its name, the address (including ZIP

21         code) of its principal place of business, its telephone number, and the name of its chief

22         executive officer;

23     b.  in the case of a natural person, his or her name, business and address (including ZIP

24         code) and business telephone number, employer, and title or position;

25

26

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR 97310
Phone: (503) 378-4732

Exhibit ___l___ Page __2__

Exhibit A - Page 10 of 49
Notice of Removal

1    c. In the case of a document, the title of the document, the author, the title or position of

2        the addressee, the type of document, the date it was prepared, the number of pages it

3        cotains, and, if applicable, its production number.

4    "LEBOEUF LAMB GREENE & MACRAE, LLP" (LEBOEUF) refers to an August 2,

5  1999 memorandum by John Maas, and produced by PGE in FERC Docket No. PA02-2-000.

6    MARKETER (S) includes the company or corporate entity that engages in the marketing of

7  electricity in the wholesale market, its parent company, subsidiaries and affiliates, and its officers,

8  directors, employees, agents, vendors, consultants, representatives or other persons acting on its

9  behalf.

10    OWNER (S) OF ELECTRICITY GENERATION includes the company or corporate

11  entity that owns the generating unit(s), its parent company, subsidiaries and affiliates, and its

12  officers, directors, employees, agents, vendors, consultants, representatives or other persons acting

13  on its behalf.

14    POWER MARKETING AFFILLIATE has the same meaning as used in section 4.2 of

15  PGE's Market Based Rate Tariff.

16    "POWER OPERATIONS-REAL TIME" (Energy Trader) means PGE employees who

17  purchased and sold energy in the real-time Western Electricity Market during January 1, 1999 and

18  December 31, 2001.

19    "POWNOW" refers to "Week in Review" reports from Bill Casey.

20    PUBLIC UTILITY means a municipal utility, public utility district or a cooperative.

21    PURCHASER (S) means the public utility or private, government or corporate entity in the

22  State of Oregon that purchases electricity in the wholesale market, its parent company, subsidiaries

23  and affiliates, and its officers, directors, employees, agents, vendors, consultants, representatives or

24  other persons acting on its behalf.

25    RELATING and RELATE mean a reference to any given subject that constitutes, contains,

26  embodies, reflects, identifies, states, refers to, or is in any way relevant to that given subject.

Page 3 – CIVIL INVESTIGATIVE DEMAND(ORS 646.618)
      UNLAWFUL TRADE PRACTICES

Exhibit A - Page 11 of 49
Notice of Removal

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR 97310
Phone: (503) 378-4732

Exhibit ___1___ Page _2_

1      RELEVANT TIME PERIOD is January 1, 1999 to December 31, 2001.

2      SEVENTEEN (17) DAYS OF TRANSACTIONS refers to the following dates:

3      April 6, 2000, April 15, 2000, April 16, 2000, April 23, 2000, April 26/2000, May 1, 2000,

4   May 2, 2000, May 3, 2000, May 4, 2000, May 5, 2000, May 9, 2000, May 10, 2000, May 11,

5   2000, May 12, 2000, May 15, 2000, May 32, 2000, and June 6, 2000.

6      TRADER (S) means the company or corporate entity that trades electricity in the wholesale

7   market, its parent, subsidiaries and affiliates and its officers, directors, employees, agents, vendors,

8   consultants, representatives or other persons acting on its behalf.

9      "TRANSCRIPT OF SCHEDULER TELEPHONE CONVERSATIONS" means the

10  transcripts of PGE Energy Traders produced to the Federal Energy Regulatory Commission

11  (FERC) in Docket Nos. EL02-114-00 and PA02-2-000.

12     "WESTERN ELECTRICITY MARKET" means the market operating in the U.S. portion

13  of the Western Electricity coordinating Council (WECC) aka the Western Systems coordinating

14  Council (WSCC).

15     "YOU," "YOUR," and "YOUR COMPANY" means Portland General Electric Company

16  and its divisions, units, subsidiaries whether or not wholly owned, any merged, consolidated or

17  acquired predecessors and the present and former officers, directors, agents, representatives or

18  employees of any of the foregoing.

19     The singular includes the plural, and the plural includes the singular.

20

21

22

23

24

25

26

Page 4 – CIVIL INVESTIGATIVE DEMAND(ORS 646.618)
    UNLAWFUL TRADE PRACTICES
                    DEPARTMENT OF JUSTICE
                      1162 Court St. NE
                      Salem, OR 97310
                    Phone: (503) 378-4732

Exhibit ____1____ Page ___4__

Exhibit A - Page 12 of 49
Notice of Removal

## INSTRUCTIONS

1   1. The relevant time period for which documents and information are requested is

2

3   January 1,1999 to December 31, 2001.

4   2. In each instance in which a document is produced in response to a request, the current

5   edition should be produced together with all earlier editions, or predecessor documents serving

6   the same function during the relevant time period, even though the title of earlier documents

7   may differ from current versions.

8   3. The document request calls for all described documents in your possession, custody

9   or control without regard to the person or persons by whom or for whom the documents were

10  prepared (e.g., your company employees, distributors or dealers, competitors, or others).

11  4. Counsel for your company and the State of Oregon may enter into an agreement to

12  modify the scope and timelines for production, or suspend the timelines for document

13  production, under this investigative demand.

14  5. The following procedures shall apply to the production, inspection and copying of

15  documents:

16      a.   The producing parties shall produce original, complete documents.  Documents

17           shall be produced in the order that the documents are maintained in the

18           producing party's files, in original folders, with the folder's original file tabs.

19           The documents should be clipped, stapled or otherwise arranged or attached in

20           the same form and manner as that in which they were maintained and stored.  In

21           lieu of producing original documents in their original folders, you and your

22           company may produce duplicates of the originals if such duplicates are

23           identical in all respects to the original and the duplicates are accompanied by a

24           sworn statement from a representative of your company that the duplicates are

25           identical copies of the originals and satisfy the test for admissibility under FRE

26           1003.

Page 5 – CIVIL INVESTIGATIVE DEMAND(ORS 646.618)
     UNLAWFUL TRADE PRACTICES

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR  97310
Phone: (503) 378-4732

Exhibit ____|____ Page ____5____

1          b.  All attachments to responsive documents shall be produced as attachments to

2              the responsive documents.

3          c.  Submit all non-privileged portions of any responsive document, noting where

4              redactions in the document have been made. No portion of any documents will

5              be masked and the entire document shall be produced.

6          d.  You and your company shall label each group of responses to the

7              interrogatories and document requests in the following manner: Response to

8              Interrogatory Number 1; Response to Interrogatory No. 2; Response to

9              Document Request No. 1, etc., and attach the label to the corresponding

10             documents or interrogatory responses.

11         e.  You and your company will provide a key to all abbreviations used in the

12             documents produced pursuant to this investigative demand. The key will be

13             attached to the appropriate documents.

14         f.  When your response requires identification of document(s) that exist and relate

15             to an information request, such responses shall include a description of the

16             general nature of the documents relating to the response.

17     6. If you contend that the answer to any interrogatory or a response to any document

18  request is privileged in whole or in part, or otherwise object to any interrogatory, document

19  request, or parts thereof, please state the reasons for such objections or grounds for exclusion with

20  respect to each part of the interrogatory or document request and identify each person having

21  knowledge of the factual basis, if any, on which the privilege or other ground is asserted. If you

22  contend that an interrogatory or document request is unclear or ambiguous, state the basis for such

23  contention in detail. The purpose of this instruction is to facilitate judicial review of any refusal to

24  answer the interrogatories or documents requests fully and completely.

25

26

Page 6 – CIVIL INVESTIGATIVE DEMAND(ORS 646.618)
    UNLAWFUL TRADE PRACTICES

Exhibit __ 1 __ Page __ 6 __

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR 97310
Phone: (503) 378-4732

1    7. The interrogatory responses shall be accompanied by a statement under oath of the

2    person(s) providing the answers to the interrogatories stating the information contained in the

3    responses to these interrogatories is true and correct to the best of his/her information and belief.

4

5    **NOTICE:**    Should you fail to produce the requested documents at the time and place

6    required by this Investigative Demand, the Oregon Department of Justice will request a court

7    order as soon thereafter as possible mandating your production pursuant to ORS 646.618

8    (Unfair Trade Practices).

9

10    DATED this _6_ day of November, 2003.

11

12                                    HARDY MYERS
                                      Attorney General
13

14                                    _____
                                      Caren Rovics, OSB #90149
15                                    Assistant Attorney General
                                      Financial Fraud/Consumer Protection Section
16

17    **REFER INQUIRIES TO:**
      Caren Rovics, Assistant Attorney General
18    Oregon Department of Justice, Financial Fraud/Consumer Protection Section
      1162 Court Street NE, Salem, OR 97301
19    Phone: (503) 947-4333; Fax: (503)378-5017

20

21

22

23

24

25

26

Page 7 -- CIVIL INVESTIGATIVE DEMAND(ORS 646.618)
         UNLAWFUL TRADE PRACTICES

Exhibit A - Page 15 of 49
Notice of Removal

Exhibit ____1____ Page ___7___

1        INVESTIGATIVE DEMAND

2        EXHIBIT A

3        <u>**INTERROGATORIES**</u>

4    <u>You are required by law to answer and produce the following for the relevant period of January 1,</u>

5    <u>1999 to December 31, 2001.</u>

6    **NOTE:** Where applicable we would prefer to receive your responses in an electronic, searchable

7    format.

8

9        1.       Identify all PGE employees who worked as "Power Operations-Real Time"

10   (Energy Trader) involved in trading electricity, during the relevant period of time

11   <u>ANSWER</u>:

12

13

         2.       Identify all PGE employees who worked in "Control Area Operations"
14
     (Transmission Scheduler),   involved in scheduling electricity, during the relevant period of time.
15
     <u>ANSWER</u>:
16

17

18

19       3.       Identify the PGE Energy Trader(s) who participated in real-time transaction(s)

20   during the "17 days of transactions."

21       a. Indicate the date(s) that the identified Energy Trader participated in 17 days of

22   transactions.
23
     ANSWER:
24

25

26

Page 8 -  INVESTIGATIVE DEMAND (ORS 646.618)
          UNLAWFUL TRADE PRACTICES                     Exhibit ___1___ Page __8__
          CR:or/OEDF2383                    Department of Justice
                                            1162 Court Street NE
Exhibit A - Page 16 of 49                   Salem, OR 97301-4096
Notice of Removal                           (503) 947-4333

1    4.    Identify the PGE Transmission Schedulers who were involved in the scheduling

2    of the "17 days of transactions."

3         a. State the date(s) that the identified Transmission Scheduler participated in a

4    power transaction.

5    ANSWER:

6

7

8

9    5. Identify all PGE employees, including managers, who knew of the meeting, or subject

10   of the meeting, on or about March or April, 2000, of Bill Casey (Casey) and Diana Scholtes

11   (Scholtes) in which Death Star transactions were discussed.

12   ANSWER:

13

14

15   6. Identify all PGE employees, including managers, who participated or had knowledge

16   of the decision to accept the Scoltes' Death Star power transactions proposal, subject of the

17   Case-Scholtes meeting in March or April 2000.

18   ANSWER:

19

20   7. Identify all PGE documents relating to the decision by PGE to agree to Death Star

21   power transactions discussed in the Casey-Scholtes meeting on or about March or April, 2000.

22   ANSWER:

23

24

25

26

Page 9 -   INVESTIGATIVE DEMAND (ORS 646.618)
           UNLAWFUL TRADE PRACTICES
           CR:er/CEDP2393

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit _____ 1 ____ Page __ 9 _

8. Identify and explain "Account No. 740768" as used in the PGE "Transcripts of

Scheduler Telephone Conversations" produced by PGE in FERC Docket No. EL02-114-000.

a) Explain why the "740468" was used for PGE Death Star power transactions

involving Bonneville Power Administration (BPA) transmission during the "17 days of

transactions."

ANSWER:


9. Identify all PGE documents that refer to power transactions in Account No. 740768

for the period January 1, 1999 to December 31, 2001.

a) Identify the ID numbers of the PGE Energy Trader and Transmission Scheduler

and corresponding names  assigned to those ID numbers for all Account No. 74076 transactions.

ANSWER:




10. Identify all PGE employees, including managers, who knew of the August 2, 1999

"Power Transactions" memorandum from John Maas, LeBoeuf, Lamb, Greene & MacRae, LLP,

(LeBoeuf) between August 2, 1999 and June 30, 2000.

ANSWER:



11. Identify all PGE employees, including managers, who participated or had knowledge

of the decision to reject the "Power Transactions" explained in the August 2, 1999 LeBoeuf

memorandum.


Page 10 -  INVESTIGATIVE DEMAND (ORS 646.618)
            UNLAWFUL TRADE PRACTICES
            CR:er/CEDF2383

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

1  ANSWER:

2

3       12. Identify all documents related to PGE's decision for rejecting the "Power

4  Transactions" explained in the August 2, 1999 LeBoeuf memorandum.

5  ANSWER:

6

7

8       13. State the compensation/salary paid to the following PGE employees for the years

9  1997, 1998, 1999, 2000 and 2001:

10            a) Bill Casey;

11            b) Marilyn Huntsinger;

12            c) Mary Turina.

13  ANSWER:

14

15

16       14. State the amount of bonus compensation paid to the following PGE employees

17  for the years 1997, 1998, 1999, 2000 and 2001:

18            a) Bill Casey;

19            b) Marilyn Huntsinger;

20            c) Mary Turina.

21  ANSWER:

22

23

24

25       15. Identify all job position(s), job description(s) and time period(s) these former PGE

26  employees held while employed by PGE.

Page 11 -  INVESTIGATIVE DEMAND (ORS 646.618)
           UNLAWFUL TRADE PRACTICES
           CR:cr/CEDF2383

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

1        a) Diana Scholtes;

2        b) Tim Belden;

3        c) John Forney.

4   ANSWER:

5

6       16.    State the dollar amount and percent of PGE wholesale revenues derived from

7

8   energy trades with Enron Power Marketing, Inc. (EMPI) for the years 1998, 1999, 2000 and

9   2001.

10   ANSWER:

11       17.    State the dollar amount and percent of PGE wholesale revenues derived from

12   energy trades with energy Marketers, other than, EMPI for the years 1998, 1999, 2000 and 2001.

13   ANSWER:

14

15

16       18. Identify all PGE employees, including managers, responsible for retention, archiving

17   or purging of PGE electronic mail (e-mail) between January 1, 1999 and December 31, 2001.

18   ANSWER:

19

20       19. Identify all documents related to PGE e-mail retention policy/procedure between

21   January 1, 1999 and December 31, 2001.

22   ANSWER:

23

24

25

26

Page 12 - INVESTIGATIVE DEMAND (ORS 646.618)
         UNLAWFUL TRADE PRACTICES
         CR:cr/CEDP2383

Exhibit ___1___     . Page ( 2-

1    20. Identify all PGE employees, including managers, responsible for recording or

2    backing up PGE Energy Trader and Transmission Schedulers telephone lines, between January

3    1, 1999 and December 31, 2001.

4    ANSWER:

5

6

7    21.    Identify all documents related to recording, back-up or recording over PGE

    Energy Trader and Transmission Schedulers telephone lines between January 1, 1999 and

8

9    August 30, 2001.

10    ANSWER:

11

12    22.    Identify all PGE employees, including managers, responsible for posting

13    information on the Open Access Same-time Information System (OASIS) for "power marketing

14    affiliate" transactions between January 1, 1999 and December 31, 2001.

15

16    ANSWER:

17

18    23.    Identify documents relating to all PGE policies and procedures related to posting

19    information on OASIS with a "power marketing affiliate" between January 1, 1999 and

20    December 31, 2001.

21    ANSWER:

22

23

24    24. Identify PGE employees, including managers, who were responsible for conducting

25    training related to posting information on OASIS for a "power marketing affiliate" transaction.

26

Page 13 - INVESTIGATIVE DEMAND (ORS 646.618)
       UNLAWFUL TRADE PRACTICES
      CR:er/CEDF2383

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit ___ 1 ___ Page ___ 13

1        a) Identify all dates of training by PGE related to "power marketing affiliate"

2  transactions.

3        b) Identify all documents used in the training of PGE related to "power marketing

4  affiliate" transactions.

5        c) Identify all PGE employees, including managers, who attended any training

6  related to "power marketing affiliate" transactions and dates of attendance.

7  ANSWER:

8

9

10    25.    Identify all PGE employees, including managers, responsible for posting with

11  OASIS "power marketing affiliate" transactions for the "17 days of transactions."

12  ANSWER:

13

14

15    26.    Identify all documents related to posting on OASIS "power marketing affiliate"

16  transactions for the "17 days of transactions."

17

18  ANSWER:

19

20

21

22

23

24

25

26

Page 14 - INVESTIGATIVE DEMAND (ORS 646.618)
      UNLAWFUL TRADE PRACTICES
        CR:er/CEDF2383

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit ___ | ___ Page  14

INVESTIGATIVE DEMAND

EXHIBIT B

## DOCUMENTS TO BE PRODUCED

**NOTE:** Where applicable we would prefer to receive your responses in an electronic, searchable format.

1.    Produce all documents disclosed by PGE related to Federal Energy Regulatory Commission (FERC) Docket No. EL02-114-00, (Docket No. EL02-114-000).  Include documents, and portions of those documents, subject to Presiding Administrative Law Judge Jeffie J. Massey's Protective Order dated September 6, 2002.

a) Including, but not limited to, PGE Responses and Exhibits 1 through 44.

2.  Produce the sworn testimony, obtained in FERC docket No. EL02-114-000, including portions subject to the FERC "Protective Order", for the following deponents:

a) Bill Casey

b) Mark Boesch

c) Joe Taylor

d) Terry Findley

e) Floyd Mullet

f) Bob Frost

g) Steve Sundet

h) Judy Madsen

3.  Produce all documents of OASIS postings for all "power marketing affiliate" transactions with EMPI for the period January 1, 1999 to December 31, 2001.

4.  Produce all documents identified in your response to interrogatory No. 7.

Page 15 -  INVESTIGATIVE DEMAND (ORS 646.618)
         UNLAWFUL TRADE PRACTICES
         CR:cr/CEDF2383

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit A - Page 23 of 49
Notice of Removal

5. Produce all documents identified in your response to interrogatory No.9.

6. Produce all documents identified in your response to interrogatory No. 12.

7. Produce all documents identified in your response to interrogatory No. 21.

8. Produce all documents identified in your response to interrogatory No. 23.

9. Produce all documents identified in your response to interrogatory No. 24(b).

10. Produce all documents identified in your response to interrogatory No. 26.

11. Produce all documents, including e-mails and telephone records, related to PGE policy or procedure where PGE enters into an energy contract or energy agreement with a "power marketing affiliate."

12. Produce all documents that refer to the Casey-Scholtes meeting at PGE in March or April of 2000 where the "Death Star" transactions were discussed.

13. Produce all Power Scheduling and Accounting System (PSAS) records for all real-time transactions for power and transmission where EPMI was a counterparty for the period January 1, 2000 to December 31, 2001.

a) Produce all documents that identify the "user" according to their user ID number.

14. Produce all documents related to the conclusion by PGE in determining that 1,290 postings on its web page for sales and purchases between PGE and EPMI were contrary to the PGE's Market Based Rate Tariff.

15. Produce OASIS postings for all "Death Star" energy transactions with EPMI for the "17 days of transactions."

16. Produce all PGE Real-Time Energy Trader telephone calls related to the trading of power for the following dates:

Page 16 - INVESTIGATIVE DEMAND (ORS 646.618)
UNLAWFUL TRADE PRACTICES
CR:cr/CEDF2383

Exhibit A - Page 24 of 49
Notice of Removal

Exhibit __ 1 __ Page 14

1      **2000**

2      a) January 2000: 1/10/2000 and 1/13/2000

3      b) February 2000: 2/7/2000, 2/8/2000 and 2/28/2000

4      c) March 2000: 3/6/2000

5      d) April 2000: 4/3/2000, 4/17/2000, 4/19/2000, 4/20/2000 and 4/24/2000

6      e) May 2000: 5/23/2000, 5/17/2000 and 5/23/2000

7      f) June 2000: 6/17/200

8      g) July 2000: 7/19/2000

9      h) August 2000: 8/18/ 2000

10     i) September 2000: 9/5/2000, 9/6/2000, 9/8/2000, 9/9/2000, 9/11/200, 9/12/2000,

11     9/14/2000, 9/23/2000, and 9/29/2000

12     j) November 2000: 11/13/2000, 11/16/2000, 11/18/2000, 11/23/2000, and 11/24/2000

13     k) December 2000: 12/30/2000

14     **2001**

15     l)  January 2001: 1/7/2001 and 1/21/2001

16     m) March 2001: 3/31/2002

17     n)  May 2001: 5/21/2001, 5/22/2001, 5/23/2001 and 5/24/2001

18     o)  June 2001: 6/9/2001

19          17.    Produce all e-mails from or to Bill Casey and Tim Belden for the period January 1,

20     1999 and December 31, 2001.

21          18.    Produce all e-mails from or to Bill Casey and John Forney for the period January 1,

22     1999 and December 31, 2001.

23          19.    Produce all e-mails from or to Bill Casey and Diana Scholtes for the period January

24     1, 1999 and December 31, 2001.

25          20.    Produce all e-mails from Bill Casey to "POWNOW" for the period January 1, 1999

26     to December 31, 2001.

Page 17 - INVESTIGATIVE DEMAND (ORS 646.618)
         UNLAWFUL TRADE PRACTICES
         CR:cr/CEDF2383

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

EXHIBIT ___1___ PAGE ___17

Exhibit A - Page 25 of 49
Notice of Removal

1       21.     Produce all e-mails from or to Bill Casey and Marlene Huntsinger for the period

2    January 1, 1999 to December 31, 2001.

3       22.     Produce all e-mails from or to Marlene Huntsinger and Tim Belden for the period

4    January 1, 1999 and December 31, 2001.

5       23.     Produce all e-mails from or to Marlene Huntsinger and John Forney for the period

6    January 1, 1999 and December 31, 2001.

7       24.     Produce all e-mails from or to Marlene Huntsinger and Diana Scholtes for the period

8    January 1, 1999 and December 31, 2001.

9       25.     Produce all e-mails from or to Mary Turina and Tim Belden for the period January

10   1, 1999 and December 31, 2001.

11      26.     Produce all e-mails from or to Mary Turina and John Forney for the period January

12   1, 1999 and December 31, 2001.

13      27.     Produce all e-mails from or to Mary Turina and Diana Scholtes for the period

14   January 1, 1999 and December 31, 2001.

15      28.     Produce all cell phone records for PGE-issued cell phone for Bill Casey for the

16   period January 1, 1999 to December 31, 2001.

17         a) Cell phone records should include all telephone numbers called.

18      29. Produce all documents identified by PGE Energy Trader Mark Boesch in the April 26,

19   2000 "Transcript of Scheduler Telephone Conversation," as "Memo Account."

20      30. Produce all documents referred to by PGE Energy Trader Terry Finley in the May 4,

21   2000 "Transcript of Scheduler Telephone Conversation," including but not limited to a "sheet" in a

22   "3-ring binder" on how to do transactions with "these accounts."

23      31. Produce the "Memo" referred to by PGE Energy Trader Mitch Hawks in the May 5,

24   2000 "Transcript of Scheduler Telephone Conversation" produced in FERC Docket No. EL-02-

25   114-000. Memo begins: "To Water Power when Enron calls and wants a buy-resell at Malin with

26   WWP."

Page 18 - INVESTIGATIVE DEMAND (ORS 646.618)
         UNLAWFUL TRADE PRACTICES
         CR:er/CEDF2383

Exhibit    )     Page ... 18

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

1    32.   Produce the "instructions" referenced by PGE Energy Trader Chris Hawkins or Chris

2    Hartman in the May 12, 2000 "Transcript of Scheduler Telephone Conversation."

3    33.   Produce documents relating to information sharing between PGE Merchants and PGE

4    Power Transmission.

5    34.   Produce the "PGE General Transmission Agreement" (IR) with BPA in effect during

6    2000 and 2001.

7

8    **NOTICE:**  Should you fail to produce the information required by this Investigative

9    Demand on or before the required date, the Oregon Department of Justice will request a court

10   order as soon thereafter as possible mandating your response pursuant to ORS 646.618(2).

11         DATED this _6_ day of November, 2003.

12                                              HARDY MYERS
                                               Attorney General
13

14

15                                             Caren Rovics, OSB #90149
                                               Assistant Attorney General
16                                             Financial Fraud/Consumer Protection Section

17   **PLEASE REFER INQUIRIES TO:**
     Caren Rovics
18   Assistant Attorney General
     Oregon Department of Justice
19   Financial Fraud/Consumer Protection Section
     1162 Court Street NE, Salem, OR 97301
20   Phone: (503) 947-4333
     Fax: (503) 378-5017
21

22

23

24

25

26

Page 19 -  INVESTIGATIVE DEMAND (ORS 646.618)
           UNLAWFUL TRADE PRACTICES
           CR:cr/CEDF2383               Department of Justice
                                        1162 Court Street NE
Exhibit A - Page 27 of 49               Salem, OR 97301-4096
Notice of Removal                          (503) 947-4333

1

2                          DEPARTMENT OF JUSTICE

3                            STATE OF OREGON

4   IN THE MATTER OF:                    | AFFIDAVIT OF SERVICE

5   THE PORTLAND GENERAL ELECTRIC        |
    COMPANY                              |
6   UNLAWFUL TRADE PRACTICES             |
    INVESTIGATION                        |

7

8   STATE OF OREGON        )
                           )  ss.
9   County of Marion       )

10      I certify that on the _7th_ day of November, 2003, at the hour of _09:30hrs_, I

11  served David A. Aamodt, Registered Agent, for Portland General Electric Co., with a true copy

12  of the attached Civil Investigative Demand by:

13  ___ Personal Service (Personally and in Person)

14  _X_ Office Service (left with the person apparently in charge during normal working hours)

15  To:    Portland General Electric Company, c/o David A. Aamodt, Registered Agent

16  At:    121 S.W. Salmon Street, Portland, OR 97204.

17      I am a competent person over the age of 18 years, a resident of said State, and am

18  authorized as a non-attorney employee of the Oregon Department of Justice to serve this

19  document pursuant to ORS 180.260.

20          Served by:              _Robert J. Culley_
            Address:               1162 Court St. NE
21                                 Salem, OR 97301
            Telephone:             (503) 378-4732
22                                 _Robert J. Culley_
                                   Signature of server
23

24      SUBSCRIBED AND SWORN to before me this _12th_ day of November, 2003.

25   ┌─────────────────────────┐
     │      OFFICIAL SEAL      │      _Gay M Stender_
26   │     GAY M STENDER       │      Notary Public for Oregon (affix stamp)
     │  NOTARY PUBLIC-OREGON   │
     │   COMMISSION NO. 329667 │
     │ MY COMMISSION EXPIRES DEC. 08, 2003 │
     └─────────────────────────┘

Page 1 -  IN THE MATTER OF PORTLAND GENERAL ELECTRIC COMPANY (UNLAWFUL
          TRADE PRACTICES INVESTIGATION)
                                         Department
                                         of Justice
Exhibit A - Page 28 of 49                1162 Court Street NE           ....        20
Notice of Removal                        Salem, OR 97301-4096
                                         (503) 947-4333

OREGON DEPARTMENT OF JUSTICE

1

2

IN THE MATTER OF:                   ) INVESTIGATIVE SUBPOENA
3                                   )
                                    )
4                                   ) Pursuant to the Oregon
PORTLAND GENERAL ELECTRIC           ) Racketeer Influenced and
5  COMPANY                          ) Corrupt Organization Act,
                                    ) [ORICO] ORS 166.730
6                                   )

7

TO:   Portland General Electric Company
8  —    c/o David a. Aamodt, Registered Agent
          121 SW Salmon Street, Ste. 1300
9         Portland, OR 97204

10

GREETINGS:
11
        The Oregon Department of Justice has reason to believe that Portland General Electric
12
and other persons or enterprises, has engaged in or is engaging in, acts or practices declared to
13
be unlawful under and the Oregon Racketeer Influenced and Corrupt Organizations Act, ORS
14
166.715 et. seq. This investigative subpoena is issued pursuant to ORS 166.730.
15
        David A. Aamodt, is required by law to appear on **December 1, 2003**, at the hour of
16
10:00 am at the Oregon Department of Justice, Financial Fraud Section, Robertson Building 1st
17
floor Conference Room A, 1215 State St. NE, Salem, Oregon, and to answer the interrogatories
18
listed in Exhibit A and produce all records within your possession or control described in
19
Exhibit B. Or you may email your response and documents to caren.rovics@doj.state.or.
20

21

                              **DEFINITIONS**
22
        "**AND**" and "**OR**" shall be construed either disjunctively or conjunctively as necessary
23
to bring within the scope of the request all responses that might otherwise be construed to be
24
outside the scope.
25
        "**ANY**" shall be construed as synonymous with every and shall be all inclusive.
26

Page 1 – INVESTIGATIVE SUPOENA (ORS 166.730)
        OREGON RACKETEER INFLUENCED AND CORRUPTION ACT

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR 97310
Phone: (503) 947-4333



1    "ALL E-MAILS" means e-mails addressed to and copied to a recipient.

2    "BONNEVILLE POWER ADMINISTRATION" (BPA) is the federal agency, under the

3    U.S. Department of Energy, that markets wholesale electrical power and operates and markets

4    transmission services in the Pacific Northwest.

5    "CONTROL AREA OPERATION" (Transmission Scheduler) means PGE employee

6    scheduling energy on the Western Energy Market during January 1, 1999 and December 31,

7    2001.

8    "DEATH STAR TRANSACTION" means submission of energy transactions by PGE

9    Energy Traders and Transmission Schedules implementing transactions on the AC Intertie

10   between the California-Oregon Boarder (COB) and John Day, involving a buy-resell transaction

11   between PGE and EMPI and using Avista Utilities (Washington Water Power or WWP as a

12   sleeve.)

13   FEDERAL ENERGY REGULATORY COMMISSION DOCKET NO. EL02-114-000

14   (FERC) means *In the Matter of Portland General Electric Company, Enron Power Marketing,*

15   *Inc.*

16   FEDERAL ENERGY REGULATORY COMMISSION DOCKET NO. PA02-2-000

17   (FERC) means *FERC Factfinding Investigation Docket No. PA02-2-000.*

18   IDENTIFY means to provide a statement of:

19   a.   in the case of a person other than a natural person, its name, the address (including ZIP

20        code) of its principal place of business, its telephone number, and the name of its chief

21        executive officer;

22   b.   in the case of a natural person, his or her name, business and address (including ZIP

23        code) and business telephone number, employer, and title or position;

24   c.   In the case of a document, the title of the document, the author, the title or position of

25        the addressee, the type of document, the date it was prepared, the number of pages it

26        contains, and, if applicable, its production number.

Page 2 – INVESTIGATIVE SUPOENA (ORS 166.730)
    OREGON RACKETEER INFLUENCED AND CORRUPTION ACT

1    "LEBOEUF LAMB GREENE & MACRAE, LLP" (LEBOEUF) refers to an August 2,

2    1999 memorandum by John Maas, and produced by PGE in FERC Docket No. PA02-2-000.

3    MARKETER (S) includes the company or corporate entity that engages in the marketing of

4    electricity in the wholesale market, its parent company, subsidiaries and affiliates, and its officers,

5    directors, employees, agents, vendors, consultants, representatives or other persons acting on its

6    behalf.

7    OWNER(S) OF ELECTRICITY GENERATION includes the company or corporate entity

8    that owns the generating unit(s), its parent company, subsidiaries and affiliates, and its officers,

9    directors, employees, agents, vendors, consultants, representatives or other persons acting on its

10   behalf.

11   "POWER MARKETING AFFILLIATE" has the same meaning as section 4.2 of PGE's

12   Market Based Rate Tariff.

13   "POWER OPERATIONS-REAL TIME" (Energy Trader) means PGE employees who

14   purchased and sold energy in the real-time Western Electricity Market during January 1, 1999 and

15   December 31, 2001.

16   "POWER SCHEDULING AND ACCOUNTING SYSTEM" (PSAS) is a tool set used by

17   the Energy and Transmission Schedulers, Generation Coordinators, Power Accountants and

18   Management responsible for scheduled and operating PGE's energy and transmission assets.

19   "POWNOW" refers to "Week in Review" reports from Bill Casey.

20   PUBLIC UTILITY means a municipal utility, public utility district or a cooperative.

21   PURCHASER (S) means the public utility or private, government or corporate entity in the

22   State of Oregon that purchases electricity in the wholesale market, its parent company, subsidiaries

23   and affiliates, and its officers, directors, employees, agents, vendors, consultants, representatives or

24   other persons acting on its behalf.

25   RELATING and RELATE mean a reference to any given subject that constitutes, contains,

26   embodies, reflects, identifies, states, refers to, or is in any way relevant to that given subject.

Page 3 – INVESTIGATIVE SUPOENA (ORS 166.730)
      OREGON RACKETEER INFLUENCED AND CORRUPTION ACT

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR 97310
Phone: (503) 947-4333

1      RELEVANT TIME PERIOD is January 1, 1999 to December 31, 2001.

2      "SEVENTEEN (17) DAYS OF TRANSACTIONS" refer to:

3      April 6, 2000, April 15, 2000, April 16, 2000, April 23, 2000, April 26/2000, May 1, 2000,

4    May 2, 2000, May 3, 2000, May 4, 2000, May 5, 2000, May 9, 2000, May 10, 2000, May 11,

5    2000, May 12, 2000, May 15, 2000, May 32, 2000, and June 6, 2000.

6      TRADER (S) means the company or corporate entity that trades electricity in the wholesale

7    market, its parent, subsidiaries and affiliates and its officers, directors, employees, agents, vendors,

8    consultants, representatives or other persons acting on its behalf.

9      "TRANSCRIPT OF SCHEDULER TELEPHONE CONVERSATIONS" means the

10   transcripts of PGE Energy Traders produced to FERC in Docket Nos. EL02-114-00 and PA02-2-

11   000.

12     "WESTERN ELECTRICITY MARKET" means the market operating in the U.S. portion

13   of the Western Electricity coordinating Council (WECC) aka the Western Systems coordinating

14   Council (WSCC).

15     "YOU," "YOUR," and "YOUR COMPANY" means Portland General Electric Company

16   and its divisions, units, subsidiaries whether or not wholly owned, any merged, consolidated or

17   acquired predecessors and the present and former officers, directors, agents, representatives or

18   employees of any of the foregoing.

19     The singular includes the plural, and the plural includes the singular.

20

21

22

23

24

25

26

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR 97310
Phone: (503) 947-4333

Exhibit A - Page 32 of 49
Notice of Removal

1

2

3                            <u>INSTRUCTIONS</u>

4          1. The relevant time period for which documents and information are requested is

5   January 1, 1999 to December 31, 2001.

6          2. In each instance in which a document is produced in response to a request, the current

7   edition should be produced together with all earlier editions, or predecessor documents serving

8   the same function during the relevant time period, even though the title of earlier documents

9   may differ from current versions.

10         3. The document request calls for all described documents in your possession, custody

11  or control without regard to the person or persons by whom or for whom the documents were

12  prepared (e.g., your company employees, distributors or dealers, competitors, or others).

13         4. Counsel for your company and the State of Oregon may enter into an agreement to

14  modify the scope and timelines for production, or suspend the timelines for document

15  production, under this investigative subpoena.

16         5. The following procedures shall apply to the production, inspection and copying of

17  documents:

18              a.   The producing parties shall produce original, complete documents.  Documents

19                   shall be produced in the order that the documents are maintained in the

20                   producing party's files, in original folders, with the folder's original file tabs.

21                   The documents should be clipped, stapled or otherwise arranged or attached in

22                   the same form and manner as that in which they were maintained and stored.  In

23                   lieu of producing original documents in their original folders, you and your

24                   company may produce duplicates of the originals if such duplicates are

25                   identical in all respects to the original and the duplicates are accompanied by a

26                   sworn statement from a representative of your company that the duplicates are

Page 5 – INVESTIGATIVE SUPOENA (ORS 166.730)
        OREGON RACKETEER INFLUENCED AND CORRUPTION ACT

DEPARTMENT OF JUSTICE
1162 Court St. NE
Salem, OR 97310
Phone: (503) 947-4333

1       identical copies of the originals and satisfy the test for admissibility under FRE

2       1003.

3   b.  All attachments to responsive documents shall be produced as attachments to

4       the responsive documents.

5   c.  Submit all non-privileged portions of any responsive document, noting where

6       redactions in the document have been made. No portion of any documents will

7       be masked and the entire document shall be produced.

8   d.  You and your company shall label each group of responses to the

9       interrogatories and document requests in the following manner: Response to

10      Interrogatory Number 1; Response to Interrogatory No. 2; Response to

11      Document Request No. 1, etc., and attach the label to the corresponding

12      documents or interrogatory responses.

13  e.  You and your company will provide a key to all abbreviations used in the

14      documents produced pursuant to this investigative demand. The key will be

15      attached to the appropriate documents.

16  f.  When your response requires identification of document(s) that exist and relate

17      to an information request, such responses shall include a description of the

18      general nature of the documents relating to the response.

19      6. If you contend that the answer to any interrogatory or a response to any document

20  request is privileged in whole or in part, or otherwise object to any interrogatory, document

21  request, or parts thereof, please state the reasons for such objections or grounds for exclusion with

22  respect to each part of the interrogatory or document request and identify each person having

23  knowledge of the factual basis, if any, on which the privilege or other ground is asserted. If you

24  contend that an interrogatory or document request is unclear or ambiguous, state the basis for such

25  contention in detail. The purpose of this instruction is to facilitate judicial review of any refusal to

26  answer the interrogatories or documents requests fully and completely.

Page 6 – INVESTIGATIVE SUPOENA (ORS 166.730)
    OREGON RACKETEER INFLUENCED AND CORRUPTION ACT
                DEPARTMENT OF JUSTICE
                  1162 Court St. NE
                  Salem, OR 97310
                Phone: (503) 947-4333

1    7. The interrogatory responses shall be accompanied by a statement under oath of the

2    person(s) providing the answers to the interrogatories stating the information contained in the

3    responses to these interrogatories is true and correct to the best of his/her information and belief.

4

5                            AUTHORITY

6        This subpoena may be enforced as provided in ORS 166.730(3).

7

8        **NOTICE:** Pursuant to ORS 166.730, should you fail to appear, produce the records, or

9    answer the interrogatories on December 1, 2003, as required by this investigative subpoena, the

10   Oregon Department of Justice will request a court order as soon thereafter as possible

11   mandating your appearance and such other relief as allowed in ORS 166.730(3).

12

13       Dated this _6_ day of November, 2003.

14

15

16                                    HARDY MYERS
                                     Attorney General
17

18                                   _Caren Rovics_
                                     Caren Rovics, OSB #90149
19                                   Assistant Attorney General
                                     Financial Fraud/Consumer Protection Section
20

21   REFER INQUIRIES TO:
     Caren Rovics, Assistant Attorney General
22   Oregon Department of Justice, Financial Fraud/Consumer Protection Section
     1162 Court Street NE, Salem, OR 97301
23   Phone: (503) 947-4333; Fax: (503)378-5017

24

25

26

Page 7 – INVESTIGATIVE SUPOENA (ORS 166.730)
    OREGON RACKETEER INFLUENCED AND CORRUPTION ACT
                    DEPARTMENT OF JUSTICE
                    1162 Court St. NE
                    Salem, OR 97310
                    Phone: (503) 947-4333

Exhibit A - Page 35 of 49
Notice of Removal

2 __ Page 7

INVESTIGATIVE SUBPOENA

EXHIBIT A

**INTERROGATORIES**

NOTE: Where applicable we would prefer to receive your responses in an electronic, searchable format.

1.     Identify all PGE employees who worked in "Power Operations-Real Time" (Energy Trader) involved in trading electricity, during the relevant period of time

ANSWER:

2.     Identify all PGE employees who worked in "Control Area Operations" (Transmission Scheduler),   involved in scheduling electricity, during the relevant period of time.

ANSWER:

3.     Identify the Energy Trader(s) who participated in real-time transaction(s) during the "17 days of transactions."

a. Indicate the date(s) that the identified Energy Trader participated in 17 days of transactions.

ANSWER:

4.     Identify the Transmission Schedulers who were involved in the scheduling of the "17 days of transactions."

a. Indicate the date(s) that the identified Transmission Scheduler participated in a power transaction.

Page 8 -   INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
AND CORRUPT ORGANIZATION ACT

Exhibit A - Page 36 of 49
Notice of Removal

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

 

ANSWER:

1

2

3

4      5. Identify all PGE employees, including managers, who knew of the meeting, or subject

5  of the meeting, on or about March or April, 2000, of Bill Casey (Casey) and Diana Scholtes

6  (Scholtes) in which Death Star transactions were discussed.

7

8      ANSWER:

9

10      6. Identify all PGE employees, including managers, who participated or had knowledge

11  of the decision accept the Scoltes' power transactions proposal subject of the Casey-Scholtes

12  meeting in March or April, 2000.

13

14      7. Identify all documents relating to the decision by PGE to agree to power transactions

15  discussed in the Casey-Scholtes meeting on or about March or April, 2000.

16

17      ANSWER:

18

19

20      8. Identify and explain "Account No. 740768" as used in the PGE "Transcripts of

21  Scheduler Telephone Conversations" produced by PGE in FERC Docket No. EL02-114-000.

22      a) Explain why the "740468"was used for PGE Death Star power transactions

23  involving Bonneville Power Administration (BPA) transmission during the "17 days of

24

25  transactions".

26

Page 9 -  INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
          AND CORRUPT ORGANIZATION ACT

CR:cr/CBDF2398

Exhibit A - Page 37 of 49
Notice of Removal

Exhibit ___2___   Page ___9___

1    ANSWER:

2

3

4        9.  Identify all documents that refer to power transactions in Account No. 740768 for the

5    period January 1, 1999 to December 31, 2001.

6            a) Identify the ID numbers of the PGE Energy Trader and Transmission Scheduler

7    and corresponding names assigned to those ID number for Account No. 74076 transactions.

8    ANSWER:

9

10

11

12       10.  Identify all PGE employees, including managers, who knew of the August 2, 1999

13   "Power Transactions" memorandum from John Maas, LeBoeuf, Lamb, Greene & MacRae, LLP,

14   (LeBoeuf) between August 2, 1999 and June 30, 2000.

15   ANSWER:

16

17

18       11.  Identify all PGE employees, including managers, who participated or had knowledge

19   of the decision to reject the "Power Transactions" explained in the LeBoeuf August 2, 1999

20   memorandum.

21   ANSWER:

22

23

24       12.  Identify all documents relating to PGE's decision for rejecting the "Power

25   Transactions" explained in the August 2, 1999 "LeBoeuf" memorandum.

26

Page 10 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
         AND CORRUPT ORGANIZATION ACT
         CR:er/CEDF2398

Exhibit A - Page 38 of 49
Notice of Removal

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

ANSWER:

1

2

3      13. State the compensation/salary paid to the following PGE employees for the years

4    1997, 1998, 1999, 2000 and 2001:

5              a) Bill Casey;

6              b) Marilyn Huntsinger;

7              c) Mary Turina.

8

9    ANSWER:

10

11     14. State the amount of bonus compensation paid to the following PGE employees

12   for the years 1997, 1998, 1999, 2000 and 2001:

13             a) Bill Casey;

14             b) Marilyn Huntsinger;

15             c) Mary Turina.

16

17   ANSWER:

18

19

20     15. Identify all job position(s), job description(s) and time period(s) these former PGE

21   employees held while employed by PGE.

22             a) Diana Scholtes;

23             b) Tim Belden;

24             c) John Forney.

25

26

Page 11 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
         AND CORRUPT ORGANIZATION ACT

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit ___2___ Page __11__

1    ANSWER:

2

3    16.    State the dollar amount and percent of PGE wholesale revenues derived from

4    energy trades with Enron Power Marketing, Inc. (EPMI) for the years 1998, 1999, 2000 and

5    2001.

6    ANSWER:

7

8

9    17.    State the dollar amount and percent of PGE wholesale revenues derived from energy

10    trades with energy Marketers, other than, EPMI for the years 1998, 1999, 2000 and 2001.

11    ANSWER:

12

13    18. Identify all PGE employees, including managers, responsible for retention, archiving

14    or purging of PGE electronic mail (e-mail) between January 1, 1999 and December 31, 2001.

15    ANSWER:

16

17

18    19. Identify all documents related to e-mail retention policy/procedure between January

19    1, 1999 and December 31, 2001.

20    ANSWER:

21

22

23    20.    Identify all PGE employees, including managers, responsible for recording or

24    backing up PGE Energy Trader and Transmission Schedulers telephone lines, between January

25    1, 1999 and December 31, 2001.

26

Page 12 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
         AND CORRUPT ORGANIZATION ACT
         CR:cv/CEDF2308
                                          Department of Justice
                                          1162 Court Street NE
                                          Salem, OR 97301-4096
                                          (503) 947-4333

ANSWER:

1

2

3      21.     Identify all documents related to recording, back-up or recording over of Energy

4   Traders and Transmission Schedulers telephone lines between January 1, 1999 and August 30,

5   2001.

6      ANSWER:

7

8

9      22.     Identify all PGE employees, including managers, responsible for posting

10  information on the Open Access Same-time Information System (OASIS) for "power marketing

11  affiliate" transactions between January 1, 1999 and December 31, 2001.

12  ANSWER:

13

14

15     23.     Identify documents related to all PGE procedures and policies related to posting

16  information on OASIS with a "power marketing affiliate" between January 1, 1999 and

17  December 31, 2001.

18  ANSWER:

19

20     24.  Identify PGE employees, including managers, who were responsible for conducting

21  training related to posting information on OASIS   for a "power marketing affiliate" transaction.

22              a)  Identify all dates of training by PGE related to "power marketing affiliate"

23  transactions.

24

25              b)  Identify all documents used in the training of PGE employees, including

26  managers, related to "power marketing affiliate" transactions.

Page 13 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
         AND CORRUPT ORGANIZATION ACT

CR:cr/CBDF2308

Exhibit A - Page 41 of 49
Notice of Removal

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

2        13

c) Identify all PGE employees, including managers, who attended any training

1

related to "power marketing affiliate" transactions and dates of attendance.

2

3    ANSWER:

4

5        25.    Identify person(s) responsible for posting with OASIS "power marketing

6    affiliate" transactions for the "17 days of transactions."

7

     ANSWER:
8

9

10       26.    Identify all documents related to posting on OASIS "power marketing affiliate"

11   transactions for the "17 days of transactions."

12   ANSWER:

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 14 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
         AND CORRUPT ORGANIZATION ACT
         CR.cr/CEDF2308

Exhibit A - Page 42 of 49
Notice of Removal

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit  2      Page 14

INVESTIGATIVE SUBPOENA

EXHIBIT B

<u>DOCUMENTS TO BE PRODUCED</u>

NOTE: Where applicable we would prefer to receive your responses in an electronic, searchable format.

1.      Produce all documents disclosed by PGE related to Federal Energy Regulatory Commission (FERC) Docket No. EL02-114-000.  Include documents, and all portions of the document, subject to Presiding Administrative Law Judge Jeffie J. Massey's Protective Order dated September 6, 2002.

        a) Including, but not limited, to PGE Responses and Exhibits 1 through 44.

2. Produce the sworn testimony, obtained in FERC Docket No. EL02-114-000,  including portions subject to the FERC "Protective Order," for the following deponents.

        a) Bill Casey

        b) Mark Boesch

        c) Joe Taylor

        d) Terry Findley

        e) Floyd Mullet

        f) Bob Frost

        g) Steve Sundet

        h) Judy Madsen

3. Produce all documents of OASIS postings for all "power marketing affiliate" transactions with EMPI for the period January 1, 1999 to December 31, 2001.

Page 15 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
            AND CORRUPT ORGANIZATION ACT

CR:cr/CEDF2398

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit A - Page 43 of 49
Notice of Removal

Exhibit ___2___ Page ___15___

4. Produce all documents identified in your response to interrogatory No. 7.

5. Produce all documents identified in your response to interrogatory No. 9.

6. Produce all documents identified in your response to interrogatory No. 12.

7. Produce all documents identified in your response to interrogatory No. 21.

8. Produce all documents identified in your response to interrogatory No. 23.

9. Produce all documents identified in your response to interrogatory No. 24(b).

10. Produce all documents identified in your response to interrogatory No. 26.

11. Produce all documents, including e-mail and telephone records, related to PGE policy or procedure where PGE enters into a energy contract or energy agreement with a "power marketing affiliate."

12. Produce all documents that refer to the Casey-Scholtes meeting at PGE in March or April of 2000 where the "Death Star" transactions were discussed.

12. Produce all Power Scheduling and Accounting System (PSAS) records for all real-time transactions for power and transmission where EMPI was a counterparty for the period January 1, 2000 to December 31, 2001.

a) Produce all documents that identify the "user" according to their user ID number.

14. Produce all documents relating to the conclusion by PGE that 1,290 postings on its web page for sales and purchases between PGE and EPMI were contrary to the PGE's Market Based Rate Tariff.

15. Produce OASIS postings for all "Death Star" energy transactions with EPMI in the "17 days of transactions."

16. Produce all PGE Real-Time Energy Trader telephone calls related to the trading of

Page 16 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT

CR:cr/CEDF2398

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

1    power for the following dates:

2       2000

3       a) January 2000:  1/10/2000 and 1/13/2000

4       b) February 2000:  2/7/2000, 2/8/2000 and 2/28/2000

5       c) March 2000:  3/6/2000

6       d) April 2000:  4/3/2000, 4/17/2000, 4/19/2000, 4/20/2000 and 4/24/2000

7       e) May 2000:  5/23/2000, 5/17/2000 and 5/23/2000

8       f) June 2000:  6/17/200

9       g) July 2000:  7/19/2000

10      h) August 2000:  8/18/ 2000

11      i)  September 2000:  9/5/2000, 9/6/2000, 9/8/2000, 9/9/2000, 9/11/200, 9/12/2000,

12   9/14/2000, 9/23/2000, and 9/29/2000

13      j)  November 2000:  11/13/2000, 11/16/2000, 11/18/2000, 11/23/2000, and 11/24/2000

14      k) December 2000:  12/30/2000

15      2001

16      l)  January 2001:  1/7/2001 and 1/21/2001

17      m) March 2001:  3/31/2002

18      n)  May 2001:  5/21/2001, 5/22/2001, 5/23/2001 and 5/24/2001

19      o)  June 2001:  6/9/2001

20      17.    Produce all e-mails from or to Bill Casey and Tim Belden for the period January 1,

21   1999 and December 31, 2001.

22      18.    Produce all e-mails from or to Bill Casey and John Forney for the period January 1,

23   1999 and 7ecember 31, 2001.

24      19.    Produce all e-mails from or to Bill Casey and Diana Scholtes for the period January

25   1, 1999 and December 31, 2001.

26      20.    Produce all e-mails from Bill Casey to "POWNOW" for the period January 1, 1999

Page 17 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
         AND CORRUPT ORGANIZATION ACT
         CR:cr/CEDF2398                    Department of Justice               2          17
                                          1162 Court Street NE
Exhibit A - Page 45 of 49                 Salem, OR 97301-4096
Notice of Removal                          (503) 947-4333

1    to December 31, 2001.

2        21.      Produce all e-mails from or to Bill Casey to Marlene Huntsinger for the period

3    January 1, 1999 to December 31, 2001.

4        22.      Produce all e-mails from or to Marlene Huntsinger and Tim Belden for the period

5    January 1, 1999 and December 31, 2001.

6        23.      Produce all e-mails from or to Marlene Huntsinger and John Forney for the period

7    January 1, 1999 and 7ecember 31, 2001.

8        24.—     Produce all e-mails from or to Marlene Huntsinger and Diana Scholtes for the period

9    January 1, 1999 and December 31, 2001.

10       25.      Produce all e-mails from or to Mary Turina and Tim Belden for the period January

11   1, 1999 and December 31, 2001.

12       26.      Produce all e-mails from or to Mary Turnina and John Forney for the period January

13   1, 1999 and 7ecember 31, 2001.

14       27.      Produce all e-mails from or to Mary Turina and Diana Scholtes for the period

15   January 1, 1999 and December 31, 2001.

16       28.      Produce all cell phone records for PGE issued cell phone for Bill Casey for the

17   period 1, 1999 to December 31, 2001.

18               a) Cell phone records should include all telephone numbers called.

19       29.  Produce all documents identified by PGE Energy Trader Mark Boesch in the April 26,

20   2000 "Transcript of Scheduler Telephone Conversation," as "Memo Account."

21       30.  Produce all documents referred to by PGE Energy Trader Terry Finley in the May 4,

22   2000 "Transcript of Scheduler Telephone Conversation, including but not limited to, a "sheet" in a

23   "3-ring binder" on how to do transactions with "these accounts."

24       31.  Produce the "Memo" referred to by PGE Energy Trader Mitch Hawks in the May 5,

25   2000 "Transcript of Scheduler Telephone Conversation" produced in FERC Docket No.

26   EL-02-114-000. Memo begins: "To Water Power when Enron calls and wants a buy-resell at

Page 18 - INVESTIGATIVE SUBPOENA (ORS 166.730) OREGON RACKETEER INFLUENCED
        AND CORRUPT ORGANIZATION ACT
        CR:cr/CEDF2398

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

Exhibit A - Page 46 of 49
Notice of Removal

1        DEPARTMENT OF JUSTICE

2               STATE OF OREGON

3    IN THE MATTER OF:
                                          AFFIDAVIT OF SERVICE
     THE PORTLAND GENERAL ELECTRIC
4    COMPANY

5    CIVIL RACKETEER INFLUENCED AND
     CORRUPT ORGANIZATION ACT
6    INVESTIGATION

7

     STATE OF OREGON        )
8                           ) ss.
     County of Marion       )
9
          I certify that on the _7th_ day of November, 2003, at the hour of _09:30 hrs_, I
10
     served David A. Aamodt, Registered Agent, for Portland General Electric Co., with a true copy
11
     of the attached Civil Investigative Subpoena by:
12
     ___ Personal Service (Personally and in Person)
13
     _X_ Office Service (left with the person apparently in charge during normal working hours)
14
     To:    Portland General Electric Company, c/o David A. Aamodt, Registered Agent
15
     At:    121 S.W. Salmon Street, Portland, OR 97204.
16
          I am a competent person over the age of 18 years, a resident of said State, and am
17
     authorized as a non-attorney employee of the Oregon Department of Justice to serve this
18
     document pursuant to ORS 180.260.
19
              Served by:        Robert J. Culley
20            Address:          1162 Court St. NE
                                Salem, OR 97301
21            Telephone:        (503) 378-4732

22                              _Robert J. Culley_
23                              Signature of server

24        SUBSCRIBED AND SWORN to before me this _12th_ day of November, 2003.

25        OFFICIAL SEAL
          GAY M STENDER
          NOTARY PUBLIC-OREGON          _Gay M. Stender_
26        COMMISSION NO. 329667         Notary Public for Oregon (affix stamp)
          MY COMMISSION EXPIRES DEC. 08, 2003

Page 1 -  IN THE MATTER OF PORTLAND GENERAL ELECTRIC COMPANY (CIVIL
          RACKETEER INFLUENCE AND CORRUPT ORGANIZATION ACT)
          CJR/cjr/CEDF2450.DOC

                                        Department of Justice
                                        1162 Court Street NE
     Exhibit A - Page 47 of 49          Salem, OR 97301-4096
     Notice of Removal                  (503) 947-4333

1

2

3

4

5

6

7

8

9        IN THE CIRCUIT COURT OF THE STATE OF OREGON

10                          FOR MULTNOMAH COUNTY

11

STATE OF OREGON, ex rel HARDY MYERS,
12   Attorney General for the State of Oregon,

13                  Plaintiff,              Case No.  0212-13473

14        v.                                ORDER TO SHOW CAUSE FOR
                                            COMPLIANCE FOR FAILURE TO OBEY
15   PORTLAND GENERAL ELECTRIC              CIVIL INVESTIGATIVE DEMAND AND
     COMPANY,                               INVESTIGATIVE SUBPOENA SHOULD
16                                          NOT BE GRANTED (ORS 646.626; ORS
                  Defendant.                166.730)
17

18        THIS MATTER comes before the court on plaintiff State of Oregon's Motion for Order

19   to Show Cause to compel compliance for Failure to Obey Civil Investigative Demand and

20   Investigative Subpoena.  Upon proper application to the Multnomah Circuit Court, where the

21   person or enterprise resides, is found or transacts business.  The court has reviewed the Motion

22   and attached affidavits and exhibits.  The court finds that defendant has received notice pursuant

23   to ORS 626.626 and ORS 166.730(3), and that this is a proper case for entering a show cause

24   order.  Therefore,

25   Page  1 – ORDER TO SHOW CAUSE WHY APPLICATION FOR COMPLIANCE FOR
26   FAILURE TO OBEY CIVIL INVESTIGATIVE DEMAND AND INVESTIGATIVE
     SUBPOENA SHOULD NOT BE GRANTED
     CR:cr/CEDF5766.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **NOTICE OF REMOVAL** on:

Hardy Myers, Attorney General
Caren Rovics, Assistant Attorney General
Stephen K. Bushong, Assistant Attorney General
Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301

☒ by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to each attorney's last-known address and depositing in the U.S. mail at Portland, Oregon on the date set forth below;

☐ by causing a copy thereof to be hand-delivered to said attorneys at each attorney's last-known office address on the date set forth below;

☐ by sending a copy thereof via overnight courier in a sealed, prepaid envelope, addressed to each attorney's last-known address on the date set forth below; or

☐ by faxing a copy thereof to each attorney at each attorney's last-known facsimile number on the date set forth below.

DATED this 8th day of January, 2004.

By _____
William F. Martson, Jr., OSB #72163
  Direct Dial:  (503) 802-2005
  Direct Fax:  (503) 972-3705
  E-Mail:    rick@tonkon.com
**Steven M. Wilker, OSB # 91188**
  Direct Dial:  (503) 802-2040
  Direct Fax:  (503) 972-3740
  E-Mail:    steven@tonkon.com
**Paul W. Conable, OSB #97536**
  Direct Dial:  (503) 802-2188
  Direct Fax:  (503) 972-3888
  E-Mail:    paul@tonkon.com

Of Attorneys for Plaintiff
Portland General Electric Company

Page 1 -    CERTIFICATE OF SERVICE