**William F. Martson, Jr.,** OSB #72163
    E-Mail:       rick@tonkon.com
**Steven M. Wilker,** OSB # 91188
    E-Mail:       steven@tonkon.com
**Paul W. Conable,** OSB #97536
    E-Mail:       paul@tonkon.com
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204-2099
Telephone:   (503) 221-1440
Facsimile:    (503) 274-8779

Attorneys for Defendant Portland General Electric Company

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STATE OF OREGON, ex rel HARDY MYERS, Attorney General for the State of Oregon,** | Civil No. 04-CV-3002-HU |
|                     **PLAINTIFF,** | **MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH CIVIL INVESTIGATIVE DEMAND AND INVESTIGATIVE SUBPOENA AND IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)** |
|     v. | |
| **PORTLAND GENERAL ELECTRIC COMPANY,** | |
|                   **DEFENDANT.** | **By Defendant Portland General Electric Company** |
| | **REQUEST FOR ORAL ARGUMENT** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND ....................................................................................2

        A.    California Markets .......................................................................2

        B.    FERC Proceedings .......................................................................3

        C.    AG's Investigation ......................................................................5

III.    STANDARD OF REVIEW ....................................................................7

IV.     ARGUMENT .........................................................................................7

        A.    This Court Has Jurisdiction To Consider PGE's Defenses ...................7

        B.    There is Good Cause To Set Aside The CID And To Order That
              The Discovery Sought in the Subpoena May Not Be Had .....................9

        C.    The AG's Investigation Is Preempted By The Federal Power Act
              Because It Concerns The Transmission And Sale Of Electricity At
              Wholesale, An Area Over Which FERC Has Exclusive Authority.............11

              1.      Field Preemption....................................................................11

              2.      Conflict Preemption..............................................................16

              3.      Investigative Authority ........................................................18

        D.    The AG's Investigation Is Improper Because Any Claims He Might
              Otherwise Pursue Are Barred By The Settlement And The
              Doctrines Of Claim Preclusion And Judicial Estoppel.........................19

        E.    The AG's Investigation Is Improper Because The UTPA Is Plainly
              Inapplicable To The Conduct At Issue ................................................22

V.      CONCLUSION.....................................................................................23

# TABLE OF AUTHORITIES

## CASES

Page

*Arkansas Louisiana Gas Co. v. Hall*
    453 U.S. 571, 101 S. Ct. 2925 (1981) ..................................................................17

*California ex rel. Lockyer v. Mirant Corp.*
    266 F. Supp. 2d 1046 (N.D. Cal. 2003) ..........................................................13, 14

*Campbell v. San Diego Gas & Elec. Co.*
    2001 WL 1860381 (E.D.Wash. Sept. 19, 2001) ..................................................17

*Duke Energy Trading and Mktg. L.L.C. v. Davis*
    267 F.3d 1042 (9th Cir. 2001), *cert. denied*, 535 U.S. 1112 (2002) ..............2, 15, 20

*Gospel Missions of America v. City of Los Angeles*
    328 F.3d 548, 555 (9th Cir. 2003) ......................................................................21

*Hamilton v. State Farm Fire & Cas. Co.*
    270 F.3d 778 (9th Cir. 2001) ...............................................................................20

*Hampton Tree Farms, Inc. v. Jewett*
    320 Or. 599, 892 P.2d 683 (1995) ......................................................................20

*Hillsborough County, Florida v. Automated Med. Labs., Inc.*
    471 U.S. 707, 105 S. Ct. 2371 (1985) ................................................................11

*ICOM Holding, Inc. v. MCI Worldcom, Inc.*
    238 F.3d 219 (2nd Cir. 2001) ...............................................................................15

*In re Cal. Power Exchange Corp.*
    245 F.3d 1110 (9th Cir. 2001) ..............................................................................2

*In re Cal. Wholesale Elec. Antitrust Litig.*
    244 F. Supp. 2d 1072 (S.D. Cal. 2003) ..............................................................16

*Little v. Oregon Dept. of Justice*
    130 Or. App. 668, 883 P.2d 272, *rev. denied*, 320 Or. 492, 887 P.2d 793 (1994) ..................8

*Mississippi Power & Light Co. v. Mississippi*
    487 U.S. 354, 108 S. Ct. 2428 (1988) .....................................................12, 13, 18

*Natural Gas Co. v. State Corp. Comm'n of Kan.*
   372 U.S. 84, 83 S. Ct. 646 (1963) ...............................................13

*New England Power Co. v. New Hampshire*
   455 U.S. 331, 102 S. Ct. 1096 (1982) ........................................12

*Pacific Gas & Elec. Co. v. State Energy Res. & Devel. Comm'n*
   461 U.S. 190, 103 S. Ct. 1713 (1983) ....................................11, 12

*Public Util. Comm'n of Cal. v. FERC*
   900 F.2d 269 (D.C. Cir. 1990) ...................................................13

*Rissetto v. Plumbers & Steamfitters Local 343*
   94 F.3d 597 (9th Cir.1996) ....................................................20, 21

*San Diego Bldg. Trades Council v. Garmon*
   359 U.S. 236, 79 S. Ct. 773 (1959) ...........................................17

*Schneidewind v. ANR Pipeline Co.*
   485 U.S. 293, 108 S. Ct. 1145 (1988) ........................................16

*Southern Union Co. v. FERC*
   857 F.2d 812 (D.C. Cir. 1988), *cert. denied*, 493 U.S. 1072 (1990) .....................17

*State of Oregon ex rel. Kulongoski v. Cunning*
   139 Or. App. 515, 912 P.2d 958 (1996) .......................................8

*Transmission Agency of No. Cal. v. Sierra Pac. Power Co.*
   295 F.3d 918 (9th Cir. 2002), *cert. denied*, ___ U.S. ___,
   123 S. Ct. 2272 (2003) ....................................................12, 14, 15

*Van De Hey v. U.S. Nat. Bank of Oregon*
   313 Or. 86, 829 P.2d 695 (1992) ...............................................21

*Vendall Mktg. Corp. v. Oregon Dept. of Justice*
   318 Or. 189, 863 P.2d 1263 (1993) ...........................................8, 9

## CONSTITUTIONS, STATUTES, RULES AND REGULATIONS

United States Constitution, Article VI, Clause 2 .................................... *passim*

16 U.S.C. §§ 824 *et seq.* (Federal Power Act)....................................... *passim*

16 U.S.C. § 824..........................................................................15

16 U.S.C. § 824e ..............................................................................................7, 15

16 U.S.C. § 825p .................................................................................................9

28 U.S.C. § 2201 .................................................................................................1

ORS 166.715 *et seq.* (Oregon Racketeer Influenced and Corrupt Organizations Act) ........ *passim*

ORS 166.730 ................................................................................................5, 6, 7

ORS 646.605 *et seq.* (Unlawful Trade Practices Act) ........................................ *passim*

ORS 646.605(6) ................................................................................................22

ORS 646.618 ..............................................................................................5, 7, 11

Federal Rule of Civil Procedure 26 ............................................................... *passim*

Federal Rule of Evidence 201 ..............................................................................1

18 C.F.R. § 385.602 ...........................................................................................19

## OTHER

93 FERC ¶ 61,121, Docket No. EL00-95-000
(Order Proposing Remedies for California Wholesale Elect. Markets,
November 1, 2000) ...............................................................................................2

105 FERC ¶ 63,016, Docket Nos. EL02-114-006, EL02-114-007
(Presiding Judge's Certification of Uncontested Partial Settlement
and Comments Concerning Commission Consideration, November 10, 2003) ...........................19

105 FERC ¶ 63,029, Docket No. EL03-165-000
(Certification of Contested Settlement, November 21, 2003) ........................................5

105 FERC ¶ 61,302, Docket Nos. EL02-114-000, EL02-114-006,
EL02-115-001, EL02-115-007 (Order Approving Uncontested Partial
Settlement, December 18, 2003) .....................................................................5

# I.    INTRODUCTION

In November 2003, the Attorney General of the State of Oregon ("the AG") issued a Civil Investigative Demand ("CID") nominally under the Oregon Unfair Trade Practices Act ("the UTPA") and an Investigative Subpoena ("Subpoena") nominally under the Oregon Racketeer Influenced and Corrupt Organizations Act ("the ORICO") to defendant Portland General Electric Company ("PGE"). The AG's purpose in doing so was to investigate PGE's wholesale interstate sales and transmission of electricity between January 1999 and December 2001.

In response, PGE filed an action for declaratory relief under 28 U.S.C. § 2201 in the District of Oregon. *Portland General Electric Co. v. Myers*, Case No. 03-CV-1641-HA. A copy of PGE's Complaint, of which this Court may take judicial notice under F.R.E. 201, is attached as Exhibit 1. That action seeks a declaration that, because the AG's investigation concerns wholesale interstate sales of electricity, matters that are exclusively committed to the jurisdiction of the Federal Energy Regulatory Commission ("the FERC"), the AG's investigation is preempted under the Supremacy Clause of the United States Constitution by the Federal Power Act ("the FPA").

The AG then filed a Motion for Order To Show Cause For Failure to Obey Civil Investigative Demand and Investigative Subpoena in Multnomah County Circuit Court. The circuit court issued, without argument on the merits, an Order to Show Cause and scheduled a hearing. In advance of that hearing, on January 8, 2004, PGE removed the state-court action to this Court on the grounds that it is essentially federal, depends on resolution of substantial, disputed questions of federal law, and is completely preempted by the FPA. Copies of the AG's Motion and attached affidavit, and the Order to Show Cause, are attached to the Notice of Removal on file in this action.

The regulation of the sale and transmission of wholesale electricity in interstate commerce is subject to the exclusive jurisdiction of the FERC under the FPA. On their face, the

AG's CID and Subpoena seek discovery of PGE's activities in connection with wholesale trading of electricity. Because the AG's investigation is directed to matters exclusively within the jurisdiction of the FERC, the AG's investigation is preempted by the FPA and the Supremacy Clause of the United States Constitution. Moreover, the AG, on behalf of the Oregon Public Utility Commission ("OPUC"), participated in FERC investigations of these very issues and, perhaps most significantly, agreed to and participated in a settlement of the claims at issue here. Thus, any claims that the AG might conceivably bring are barred by the contractual settlement and the doctrines of claim preclusion and judicial estoppel. Finally, the AG has no power or authority under the UTPA to investigate matters concerning wholesale trading of electricity. Because the AG has no authority to investigate the matters at issue, requiring PGE to respond to the CID or the Subpoena would subject PGE to undue burden and expense. For all of these reasons, the CID and Subpoena should be set aside and quashed in their entirety.

## II.    BACKGROUND

### A.    California Markets

In 1996, the California Legislature enacted Assembly Bill ("AB") 1890 to restructure California's system for the generation and sale of electricity.[1] Under AB 1890, California's retail utilities divested themselves of much of their power generation facilities. The hope was that restructuring would result in greater competition and ultimately lower retail prices for California consumers.[2] As a direct result of AB 1890, the California Independent System Operator ("Cal ISO") and California Power Exchange Corporation ("Cal PX") were formed to

---

[1] More detailed summaries of the facts set out in sections II.A and II.B of this Memorandum can be found in: *Duke Energy Trading and Mktg. L.L.C. v. Davis*, 267 F.3d 1042, 1045-48 (9th Cir. 2001); *In re Cal. Power Exchange Corp.*, 245 F.3d 1110, 1114-19 (9th Cir. 2001); and *Order Proposing Remedies for Calif. Wholesale Elect. Markets*, 93 FERC ¶ 61,121, Docket No. EL00-95-000 (Nov. 1, 2000).

[2] In theory, if a utility owned a power plant, it would have incentives to operate the plant even if there were cheaper sources from which it could purchase power. By decoupling generation from delivery at retail, the legislature tried to eliminate such incentives and thereby reduce overall power acquisition costs to the utilities, with the ultimate goal of lower retail prices.

serve as clearinghouses for the distribution and transmission of wholesale power in California. The Cal PX and Cal ISO operated under tariffs filed with and approved by the FERC under the FPA.

Under the Cal PX and Cal ISO tariffs, sellers of electricity at wholesale made sales at market-based rates, rather than traditional cost-based rates. Each seller of power could make such sales if the seller had itself filed and had approved by the FERC a market-based rate tariff permitting it to sell at market-based rates. To obtain a market-based rate tariff, a seller had to demonstrate that it did not have market power. PGE filed and had approved a market-based rate tariff permitting it to sell power at wholesale into the Cal ISO at market rates.

The Cal PX operated a "day ahead" market into which generators with approved market-based rate tariffs within and outside California could sell their available generation capacity for the following day at a price established through a bidding process. The Cal ISO operated "hour ahead" and "real time" markets designed to fill the remaining needs of California utilities and to balance supply and demand on California's electricity grid. If there were insufficient bids to sell the power needed to balance demand, the Cal ISO was responsible for finding and purchasing additional power.

In mid-2000, there were disruptions in the Cal PX and Cal ISO markets. The Cal ISO had to identify and purchase power in the hour ahead and real time markets to meet and balance the demands of local utilities. There was insufficient supply relative to demand, and prices rose.

**B.     FERC Proceedings**

In August 2000, San Diego Gas & Electric Company filed a complaint at the FERC seeking certain relief in connection with the California energy crisis. That proceeding, FERC Docket No. EL00-95, is now commonly referred to as the California Refund Case. In the California Refund Case, purchasers of power in the markets operated by the Cal ISO have claimed that certain sellers into the Cal PX and Cal ISO markets engaged in improper conduct

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH CID AND INVESTIGATIVE SUBPOENA AND IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

resulting in unjust and unreasonable prices in violation of the sellers' market-based rate tariffs. The purchasers are seeking refunds for the difference between their power costs and what they claim market prices would have been in the absence of the alleged misconduct.

The *San Diego* Complaint and the FERC's investigation ultimately led to a number of additional FERC investigations and proceedings, including proceedings specific to PGE. In FERC Docket No. EL02-114-006, the FERC opened an investigation of PGE's trading activities with Enron Power Marketing, Inc. ("EPMI"), including allegations that PGE violated its Code of Conduct, its market-based rate tariff, and/or FERC standards of conduct relating to the posting of transactions with an affiliate, by allegedly participating in improper transactions with EPMI. For purposes of this Memorandum, we will refer to that investigation as "the EPMI docket." Subsequently, the FERC issued Orders to Show Cause to more than 30 respondents, including PGE (FERC Docket No. EL03-165-000), alleging that they engaged in certain transactions in the Cal PX and or the Cal ISO designed to improperly "game" the interstate wholesale power market. For purposes of this Memorandum, we will refer to that investigation as "the gaming docket." The FERC also opened investigations into the need for Western Region-wide price cap (Docket No. EL00-95-031), anomalous bidding behavior into the California spot markets during 2000 and 2001 (Docket No. IN03-10), possible manipulation of electricity and gas prices in Western markets (Docket No. PA02-2), and requests for price caps and refunds in the Pacific Northwest markets (Docket No. EL01-10).

The OPUC, through the AG, participated in the EPMI docket as an intervenor and ultimately consented to and participated in an uncontested settlement of the claims made against PGE. (*PGE v. Myers* Complaint, Ex. A). On behalf of the OPUC, the AG agreed to the settlement in exchange for $800,000 in rate relief for PGE's ratepayers.[3] The AG specifically

---

[3] The settlement was for a total of $8,500,000. That total is to be paid as follows: $6,100,000 to the State of California; $1,100,000 to the City of Tacoma, Washington (a purchaser of wholesale power); $800,000 to the OPUC for PGE's customers; $250,000 to Industrial Customers of Northwest Utilities (representing PGE's industrial customers); and $250,000 to Blue Heron Paper Company (a PGE customer). (*PGE v. Myers* Complaint, Ex. A, p. 42 [Agreement and

agreed to the settlement of "the proposed OPUC investigation into Portland's trading activities for the 17-day transactions, posting errors and use of the integrated resource contract, as they are outlined in the OPUC Staff Report dated June 12, 2003." (*Id.*, Ex. A, p. 26 [Agreement and Stipulation, ¶ 14, at p.7]). The uncontested settlement of the EPMI docket as to PGE was approved by the FERC on December 18, 2003. 105 FERC ¶ 61,302. The allegations in the gaming docket have also been settled by PGE and FERC Trial Staff, and the contested settlement has been certified by the Administrative Law Judge for approval by the FERC. 105 FERC ¶ 63,029 (*PGE v. Myers* Complaint, Ex. C).

    **C.    AG's Investigation**

    On or about November 6, 2003,[4] the AG, through the Financial Fraud/Consumer Protection Section of the Oregon Department of Justice, issued a CID pursuant to ORS 646.618 and an Investigative Subpoena pursuant to ORS 166.730 to PGE. Although the response procedures are somewhat different, the interrogatories and document requests in the CID and the Subpoena are identical.

    The CID recites: "The Oregon Department of Justice has reason to believe that Portland General Electric Company (PGE), and other persons or enterprises, has engaged in or is engaging in, acts or practices declared to be unlawful by the UTPA, ORS 646.605 *et. [s]eq.* This Civil Investigative Demand is issued pursuant to the provisions of ORS 646.618(1)." (*PGE v. Myers* Complaint, Ex. D).

    The Subpoena recites: "The Oregon Department of Justice has reason to believe that Portland General Electric and other persons or enterprises, has engaged in or is engaging in,

---

Stipulation, Ex. A, at A-1]). PGE also agreed to a 12-month suspension of its market-based rate tariff and to allow the OPUC to hold PGE's retail customers harmless from any loss caused by the suspension of its market-based rate authority. (*Id.*, Ex. A, pp. 24, 26, and 49-58 [Agreement and Stipulation, ¶ 10, at p.5, ¶ 14 at p.7, and Ex. B]).

[4] The AG attached returns of service to the Affidavit of Caren Rovics submitted to the state court indicating service of the CID and the Investigative Subpoena on November 7, 2003. (Notice of Removal, Ex. A, pp. 28, 47).

acts or practices declared to be unlawful under and [*sic*] the Oregon Racketeer Influenced and Corrupt Organizations Act, ORS 166.715 *et seq.* This investigative subpoena is issued pursuant to the provisions of ORS 166.730." (*PGE v. Myers* Complaint, Ex. E).

The interrogatories seek information regarding: electricity trading (Int. No. 1), scheduling electricity (Int. No.2 ), real time transactions during the "17-days of transactions" (Int. No.3),[5] transmission scheduling for the "17-days of transactions" (Int. No. 4), a meeting where specific trading strategies and transactions were discussed (Int. No. 5), the decision to accept such transactions (Int. Nos. 6-7), the use of a particular account in scheduling such transactions which was identified in transcripts produced in the EPMI docket (Int. Nos. 8-9), a "Power Transactions" memorandum (Int. Nos. 10-12), certain employees and former employees of PGE allegedly involved in the transactions (Int. Nos. 13-15), PGE's wholesale revenues from energy trades with EPMI and marketers other than EPMI (Int. Nos. 16-17), record retention for emails and trader and transmission telephone calls (Int. Nos. 18-21), and posting of affiliate transactions, including the "17 days of transactions" (Int. Nos. 22-26).

The document requests seek all documents related to the EPMI docket, including all documents subject to the protective order in the FERC proceeding and all testimony submitted in that proceeding (Req. Nos. 1-2). The requests also seek all documents: regarding posting of transactions between PGE and EPMI (Req. No. 3), identified in response to certain interrogatories (Req. Nos. 4-10), regarding agreements with and records of trades with power marketing affiliates, including EPMI (Req. Nos. 11, 13-15), referring to the meeting where specific strategies and transactions were discussed (Req. No. 12), relating to real time energy trading calls on certain dates in 2000 and 2001 (Req. No. 16), of emails between certain individuals for a three-year period from January 1, 1999 to December 31, 2001 (Req. Nos. 17-

---

[5] The "17 days of transactions" refers to certain trading activities on 17 separate days in the period from April 6, 2000 to June 6, 2000 that were disclosed by PGE in response to a data request by the FERC in May 2002.

Page 6 -   **DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH CID AND INVESTIGATIVE SUBPOENA AND IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

27), of cell phone records for a particular employee for the three-year period from January 1, 1999 to December 31, 2001 (Req. No. 28), identified by traders in certain call transcripts (Req. Nos. 29-32), relating to information sharing between PGE Merchants and PGE Trading (Req. No. 33), and the "PGE General Transmission Agreement" with BPA (Req. No. 34).

## III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(c) provides that, "[u]pon motion by a party or by the person from whom discovery is sought * * * and for good cause shown, the court in which the action is pending * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; * * * (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; * * *."[6]

## IV. ARGUMENT

### A. This Court Has Jurisdiction To Consider PGE's Defenses.

PGE is entitled to protection in this Court from the AG's CID and Investigative Subpoena because there is no legitimate basis for the AG's purported investigation of PGE's interstate wholesale power trading activities. Under the FPA, the regulation of such activities is committed exclusively to the FERC and the United States District Courts have exclusive jurisdiction to enforce judicially the provisions of the FPA. 16 U.S.C. §§ 824, 824e, and 825p. PGE has sought relief under the FPA and the Supremacy Clause of the U.S. Constitution in its first-filed declaratory judgment action and has done so here by removing this case to this Court.

_____

[6] The Oregon statutes on which the AG nominally relies also provide for relief. Under the UTPA, ORS 646.618(2), a petition to modify or set aside a CID, "stating good cause" may be filed in the appropriate court. The statute contains no definition of "good cause." Under the ORICO, ORS 166.730, "the investigative agency may administer oaths or affirmations, subpoena witnesses or documents or other material, and collect evidence pursuant to the Oregon Rules of Civil Procedure."

As an initial matter, PGE notes that, in state court under state law, *if it were applicable*, it is doubtful that its merits defenses, such as the federal defenses raised herein, could be raised in opposition to a CID or Investigative Subpoena. In *Vendall Marketing Corp. v. Oregon Dept. of Justice*, 318 Or. 189, 194-95, 863 P.2d 1263, 1265-66 (1993), the Oregon Supreme Court held the recipient of a CID could not raise substantive arguments about the applicability of the UTPA to its conduct as a defense to the CID. Rather, the recipient could raise such substantive arguments only if the AG subsequently filed a UTPA complaint. *Id.* If it applied to this case in this Court, *Vendall* would thus appear to prevent PGE from raising federal preemption or other substantive defenses in response to the AG's CID.

In his briefing in PGE's first-filed declaratory judgment action, the AG now argues that *Vendall* does not bar PGE from raising federal defenses in the context of a motion to enforce a CID. (*PGE v. Myers,* Defendant's Reply Memo in Support of Motion to Dismiss at 3-5 [Attached as Exhibit 2]). Notwithstanding the AG's apparent change of heart on this point – a change apparently driven by his desire to avoid a federal forum for the resolution of PGE's first-filed declaratory judgment action – the AG has not demonstrated that an Oregon state court could or would agree with the AG, in light of *Vendall* and its progeny, *State of Oregon ex rel. Kulongoski v. Cunning,* 139 Or. App. 515, 517, 912 P.2d 958, 959 (1996), and *Little v. Oregon Dept. of Justice,* 130 Or. App. 668, 676, 883 P.2d 272, 277, *rev. denied*, 320 Or. 492, 887 P.2d 793 (1994).

But even if *Vendall* would bar consideration of substantive defenses in general in state court under state law, it cannot bar this Court from considering a defense of federal preemption, particularly because this Court's jurisdiction is based on a grant of jurisdiction (exclusive of the states) by Congress in the FPA. 16 U.S.C. § 825p. Moreover, to the extent that it would purport to bar a court from considering federal jurisdictional challenges under the

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH CID AND INVESTIGATIVE SUBPOENA AND IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

FPA (or any other exclusively federal regulatory regime), *Vendall* (like the AG's investigation) is preempted by the Supremacy Clause.[7]

**B.    There is Good Cause To Set Aside The CID And To Order That The Discovery Sought in the Subpoena May Not Be Had.**

The AG is plainly seeking to investigate matters beyond his authority and jurisdiction. Matters concerning the regulation of wholesale trading and transmission of electricity in interstate commerce are exclusively committed to the jurisdiction of the FERC under the FPA. 16 U.S.C. §§ 824 *et. seq.*; section IV.C *infra*. The AG, thus, has no power to regulate such matters as a matter of federal law, and, consistent with the Supremacy Clause of the United States Constitution and the FPA, he cannot issue CIDs or subpoenas to investigate such matters. By definition, the AG can have no claim to assert with respect to the regulation of PGE's activities in connection with the wholesale trading and transmission of electricity in interstate commerce. Thus, the AG's CID and Subpoena seek information which is not relevant to any claim that the AG may pursue and are improper, Fed. R. Civ. P. 26(b)(1), and the CID and the Subpoena will necessarily cause undue burden and expense on PGE. Fed. R. Civ. P. 26(c). Accordingly, there is good cause to set aside the CID and to order that the discovery sought by the Subpoena not be had. *Id.*

The AG will argue, as he has argued in PGE's first-filed declaratory judgment action, that he is merely seeking to investigate unfair trade practices and racketeering. But that is misleading. The "trade practices" and "racketeering" activities that the AG is seeking to investigate consist entirely of wholesale electricity transactions in interstate commerce and alleged violations of the "affiliate posting" rules under the FPA and the relevant FERC tariffs and regulations (Affidavit of Caren Rovics [Ex. A to Notice of Removal] ¶¶ 11, 17). To prove that PGE engaged in unlawful or criminal acts with respect to those transactions or postings, the

---

[7] PGE also raises its defenses here, including its alternative state law defenses, to preserve them in the event that state law is found to apply and/or that *Vendall* is overturned.

AG will necessarily have to prove violations of the FPA and/or the relevant FERC tariffs or regulations. This is because PGE's interstate wholesale sales and postings are exclusively regulated by the FERC under the FPA. If the questioned transactions are not unlawful under federal law, then they are not unlawful. The State of Oregon can impose no greater or inconsistent obligations than those imposed by federal law in this exclusively federal area.

So to prove "unlawful trade practices" or racketeering with respect to these transactions and postings, the AG will have to prove violations of federal law. No such violations have been proved in the relevant FERC proceedings; to the extent PGE has settled those proceedings, it has done so without an admission of liability. Plainly – and necessarily – the AG's goal here is to prove some violation of PGE's obligations under the FPA (for example, the alleged failure to post transactions on its website) and then piggyback a state-law remedy onto that violation of federal law. In that way, the AG hopes to collect a second recovery for the State of Oregon, in addition to the $800,000 he has already obtained from PGE. But the AG has no authority to investigate or punish violations of the FPA or the relevant FERC tariffs *under any statute*. For that reason too, the CID and investigative subpoena should be set aside.

Moreover, the AG is seeking to investigate matters that already have been litigated at the FERC and which have resulted in settlements. In fact, the AG, acting on behalf of the State of Oregon through the Oregon PUC, has participated in the very proceeding at FERC concerning the activities that he now seeks to investigate. The investigation is particularly improper because the AG *agreed to the settlement* of the EPMI docket, expressly including the "17 days of transactions" and other affiliate transactions between PGE and EPMI. The AG, having agreed to the settlement on behalf of the State of the very claims he now seeks to investigate through the CID and the Subpoena, cannot now pursue other claims based on the same events and circumstances. The AG's effort is barred by the Agreement. It is also barred by the doctrines of claim preclusion and judicial estoppel. *See* section IV.D *infra*. Thus, because the AG is precluded from bringing any claim, none of the information he seeks from PGE is

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH CID AND INVESTIGATIVE SUBPOENA AND IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

relevant and the CID and the Subpoena are improper and should be set aside. Fed. R. Civ. P. 26(b)(1) and (c).

Finally, the AG's effort to investigate matters concerning the wholesale trading and transmission of electricity under the UTPA is improper, because such conduct is plainly not subject to the UTPA. *See* section IV.E *infra.* Thus, none of the discovery sought through the CID is relevant to any potential claim the AG may pursue and, thus, there is good cause to set aside the CID. ORS 646.618(2); *cf.* Fed. R. Civ. P. 26(b)(1) and (c).

**C. The AG's Investigation Is Preempted By The Federal Power Act Because It Concerns The Transmission And Sale Of Electricity At Wholesale, An Area Over Which FERC Has Exclusive Authority.**

The AG's investigation into PGE's interstate wholesale energy trading is preempted by federal law. Federal preemption arises from the Supremacy Clause of the United States Constitution, which "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County, Florida v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712, 105 S. Ct. 2371, 2375 (1985) (citations omitted). The AG's investigation is barred under the doctrines of "field" and "conflict" preemption.

**1. Field Preemption**

First, this investigation is preempted because FERC completely occupies the field of interstate wholesale-power regulation. Field preemption occurs "[w]hen the Federal Government completely occupies a given field or an identifiable portion of it." *Pacific Gas & Elec. Co. v. State Energy Res. & Devel. Comm'n*, 461 U.S. 190, 212-13, 103 S. Ct. at 1726-27 (1983). When Congress has evinced its intent that the Federal Government completely occupy a field, courts will bar any state action if "the matter on which the State asserts the right to act is in any way regulated by the Federal Act." *Id.*

The Federal Government completely occupies the field of interstate wholesale electricity transmission and sale. In the FPA, Congress has given the FERC "exclusive authority

to regulate the transmission and sale at wholesale of electric energy in interstate commerce." *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340, 102 S. Ct. 1096, 1101 (1982). That exclusive authority over the field preempts state regulation of wholesale electric sales or transmissions under the Supremacy Clause. *Mississippi Power & Light Co. v. Mississippi*, 487 U.S. 354, 371, 108 S. Ct. 2428, 2439 (1988); *Transmission Agency of No. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 928 (9th Cir. 2002), *cert. denied*, ___ U.S. ___, 123 S. Ct. 2272 (2003) ("TANC"). In the FPA, "Congress has drawn a bright line between state and federal authority in the setting of wholesale rates and in the regulation of agreements that affect wholesale rates," and has provided that "States may not regulate in areas where FERC has properly exercised its jurisdiction to determine just and reasonable wholesale rates and to insure that agreements affecting wholesale rates are reasonable." *Mississippi Power*, 487 U.S. at 374, 108 S. Ct. at 2440.

Field preemption does not require that state action conflict with federal regulation. *Pacific Gas & Elec.*, 461 U.S. at 212-13, 103 S. Ct. at 1726-27. It requires merely that the state attempt to act in an area whose regulation is exclusively the province of the federal government. Here, the State, through its CID and Subpoena, has begun an investigation of interstate wholesale energy sales and transmissions between PGE and EPMI, and of PGE's compliance with its posting requirements under the FPA. Regulation of those subjects is exclusively committed to the FERC under the FPA. *Mississippi Power*, 487 U.S. at 371, 108 S. Ct. at 2439. Accordingly, the State's investigation is preempted.

The AG has argued in PGE's first-filed declaratory relief action that he is not attempting to regulate wholesale power sales and transmission activities, but only to regulate racketeering and unlawful trade practices pursuant to laws of general applicability. This is the AG's central argument in these cases; States can regulate and impose restrictions on wholesale interstate electricity sales, so long as they are careful not to do so under statutes that actually use

the word "electricity." In other words, States may regulate in this exclusively federal area, but only through the back door.

The difficulty with that argument is that any state regulation of interstate wholesale power sales, whether direct or indirect, intrudes in an area where only the FERC can regulate. As a general matter, of course, the State has the authority to regulate racketeering and unlawful trade practices; but when it seeks to regulate or impose sanctions on interstate wholesale power sales pursuant to that general authority, it crosses the bright line and intrudes into an area of exclusive federal regulation. The FPA need not preempt Oregon's regulation of *all* business practices to preempt Oregon's regulation of *these* business practices. "Even where state regulation operates within its own field, it may not intrude 'indirectly' on areas of exclusive federal authority." *Public Util. Comm'n of Cal. v. FERC*, 900 F.2d 269, 274 n.2 (D.C. Cir. 1990); *see also Natural Gas Co. v. State Corp. Comm'n of Kan.*, 372 U.S. 84, 91-92, 83 S. Ct. 646, 650-51 (1963) (to the same effect). The State simply cannot regulate interstate wholesale power transmission, regardless of which state statute it purports to act under. *See, e.g., Mississippi Power*, 487 U.S. at 374, 108 S. Ct. at 2440.

The United States District Court for the Northern District of California recently reaffirmed that principle in a series of cases brought against PGE and other electricity wholesalers by the Attorney General of California. *California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1057-60 (N.D. Cal. 2003). There, as here, a state Attorney General brought state-law claims based on conduct in the wholesale energy markets, which conduct had already been the subject of an investigation by the FERC. The Court held that the California Attorney General's claims under California's unfair competition law were barred as a matter of field and conflict preemption. *Id.* at 1060. In so holding, the Court emphasized that the AG's broad authority to regulate unfair trade practices did not extend to claims relating to the interstate wholesale power markets. *Id.* The same is true here.

The *Lockyer* court specifically rejected the AG's argument that states can regulate wholesale interstate electricity sales through "laws of general applicability." Here is that argument as described by the *Lockyer* court: "The [California] AG asserts that the FPA was not meant to interfere with areas traditionally regulated by the states, such as unfair competition." *Id.* at 1060. Here is the court's rejection of that argument:

> "While it may be true that unfair competition is generally an area subject to state regulation, the [California] AG cannot credibly contend that regulation of interstate wholesale electric sales has not been an area of exclusive federal regulation since the FPA's original enactment in 1920 and that has been jealously guarded ever since."

*Id.*[8]

The AG's argument was also rejected by the Ninth Circuit in *TANC*, 295 F.3d at 929. There, the plaintiff attempted to attack a FERC-approved intertie agreement, not through the FPA, but *through state tort and property laws of general applicability*. In holding that the plaintiff's claims were preempted, the Ninth Circuit rejected the argument, which the AG advances here, that FPA preemption only applies to laws that are on their faces "about electricity." The Court stated: "What *TANC* seeks to achieve by its tort and property claims would defeat the entire purpose of exclusive federal regulation of interstate transmission of electricity." *Id.*

That is exactly the point here. The AG is attempting an end-run around exclusive federal jurisdiction. The same trick was tried by the California Attorney General in *Lockyer* and the plaintiff in *TANC*, and was rejected both times. The AG's argument here, like the arguments in those cases, attempts to elevate form over substance. The question is not whether the AG is

---

[8] The AG has joined in an *amicus curae* brief with the Attorney General of the State of Washington in support of the California Attorney General's Ninth Circuit appeal of Judge Walker's decision in the *Lockyer* case. That appeal has been briefed and was argued in August 2003, but has not yet been decided. In PGE's first-filed declaratory judgment action, the AG has argued that its Ninth Circuit brief raises arguments not considered by the district court in *Lockyer*. That is simply incorrect; the arguments may be presented in a different order, but the substance is the same.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH CID AND INVESTIGATIVE SUBPOENA AND IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

regulating pursuant to a statute that mentions "electricity." The question is whether he is attempting to regulate wholesale interstate sales and transmissions of electricity *under any statute*. Here, the answer to that second question is clearly yes; indeed, the AG has not seriously asserted otherwise. Because the AG is attempting to regulate wholesale interstate electricity sales, his investigation is preempted.

The FERC's exclusive jurisdiction is not limited to setting just and reasonable rates for wholesale electricity. The FPA extends the FERC's exclusive authority to "the sale of electric energy at wholesale," 16 U.S.C. § 824(b)(1) and "any rule, regulation, practice, or contract affect[ing]" wholesale rates. 16 U.S.C. § 824e(a); *see also TANC*, 295 F.3d at 918; *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 222 (2nd Cir. 2001). Here, the AG is seeking to investigate PGE's trading practices and contracts with EPMI, through which wholesale power was transmitted interstate, and as a result of which EPMI allegedly sold wholesale power in California at inflated rates. That investigation falls within the FERC's exclusive jurisdiction.

The fact that the FERC has exclusive jurisdiction over these transmissions, practices and contracts should come as no surprise to the State. As noted, the FERC recently completed a lengthy investigation of the identical transactions and trading practices that the State is now seeking to investigate under state law. It is axiomatic that "if FERC has jurisdiction over a subject, the States cannot have jurisdiction over the same subject." *Duke Energy Trading and Mktg. L.L.C. v. Davis*, 267 F.3d 1042, 1057 (9th Cir. 2001), *cert. denied*, 535 U.S. 112 (2002). The FERC's investigation resulted in a settlement, which the State of Oregon joined. It was proper for the State to participate in that process and to obtain a settlement on behalf of the PGE's ratepayers. But it is not proper for the State, having endorsed and benefited from the FERC's investigation and settlement, to now deny the FERC's exclusive authority over the field in an effort to get a second bite at the apple.

Because FERC has exclusive regulatory authority here, the AG's investigation is improper and preempted and the CID and Investigative Subpoena should be set aside.

## 2. Conflict Preemption

Conflict preemption also applies here. It bars state action "where state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S. Ct. 1145, 1150-51 (1988). Actual conflict is not required; state action is preempted when it "presents the prospect of interference with the federal regulatory power * * * even though collision * * * may not be an inevitable consequence." *In re Cal. Wholesale Elec. Antitrust Litig.*, 244 F. Supp. 2d 1072, 1082 (S.D. Cal. 2003) (quoting *Schneidewind*, 485 U.S. at 310).

The AG will argue that there is no conflict here. He supports the FERC's decision to investigate these transactions and his designee signed the FERC settlement on behalf of the OPUC. The AG simply wants a second recovery, so he has opened a parallel state investigation concerning the same facts and occurrences, in order to obtain remedies under state law that were not available under the FPA.

But those additional remedies by themselves pose a conflict for preemption purposes. The authority to regulate and the scope of remedies are both covered by the FPA. No provision is made in the statute for States to supplement either regulation or remedies. Because the penalties contained in the ORICO and the UTPA are not contemplated in the FPA, they cannot be imposed under state law consistent with a system of exclusive federal jurisdiction over wholesale electricity markets. There is simply no place for supplemental state remedies in an integrated, exclusively federal regulatory scheme. In such a scheme, Congress' choice of what remedies *are* available is also a choice of what remedies *are not* available.

The Supreme Court observed in an analogous context, "[s]ince remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger

of conflict" between federal and state regulation. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S. Ct. 773, 781 (1959). Thus, as the Court held in a case under the Natural Gas Act, allowing a state court to award retroactive remedies that the FERC cannot award constitutes an unjustifiable "usurpation of federal authority." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 584, 101 S. Ct. 2925, 2934 (1981).[9] The Court further observed that, in view of the fact that Congress has granted exclusive authority over rate regulation to the FERC under the Natural Gas Act (as it has in the FPA), "it would surely be inconsistent with * * * congressional purpose to permit a state court to do through a breach-of-contract action what [the FERC] itself may not do." *Id.* at 580, 101 S. Ct. at 2931.

That is exactly what the AG is attempting to accomplish here. The State of Oregon has obtained what recovery it can in the settlement of the EPMI docket, and the AG now seeks to override the remedial scheme of the FPA by adding remedies available only under state law. But the AG's new remedial scheme creates a conflict and is therefore preempted. Allowing the AG to obtain remedies under state law for allegedly improper activity in connection with interstate wholesale power sales and transmissions, when Congress chose not to provide for such remedies in the FPA itself, would usurp the FERC's exclusive authority over wholesale power sales. "The history of the [FPA] makes clear that Congress' intention is that if no remedy is available under the Act, then no remedy is available whatsoever." *Campbell v. San Diego Gas & Elec. Co.*, 2001 WL 1860381 at *4 (E.D.Wash. Sept. 19, 2001). As the Supreme Court recognized in *Arkansas Louisiana Gas Co.*, "it is significant which remedies are provided and which are not in a scheme of federal regulation." 453 U.S. at 584, 101 S. Ct. at 2934. Thus, the unavailability of particular remedies at FERC "negate[s] their availability in a state forum." *Southern Union Co. v. FERC*, 857 F.2d 812, 817 (D.C. Cir. 1988), *cert. denied*, 493 U.S. 1072

---

[9] Because the Natural Gas Act and the FPA are "substantially identical," the Supreme Court follows an "established practice of citing interchangeably decisions interpreting the pertinent sections of the two statutes." *Arkansas Louisiana Gas Co.*, 453 U.S. at 578 n.7, 101 S. Ct. at 2930 n. 7.

(1990). For this reason as well, the AG's investigation is barred as a matter of conflict preemption and the Investigative Subpoena and CID should be set aside.

### 3. Investigative Authority

Fundamentally, the AG's investigation is also barred because he has no authority to investigate or regulate violations of the FPA or FERC tariffs in the area of wholesale interstate electricity sales. That is what the AG is seeking to do here. The Affidavit of Caren Rovics says as much: The AG is seeking to investigate interstate electricity transactions between PGE and EPMI and PGE's compliance with the FERC's posting requirements. (Affidavit of Caren Rovics [Ex. A to Notice of Removal], ¶¶ 11-17).

The AG has no authority to investigate or regulate in this area. That authority belongs exclusively to the FERC. *See, e.g., Mississippi Power & Light*, 487 U.S. at 371, 108 S. Ct. at 2439. At bottom, what the AG is seeking to do here is to prove that PGE violated standards or requirements imposed by federal law and then ultimately to bootstrap a state-law remedy onto those violations. But to do so, the AG must first prove the alleged violations of federal law, the FPA and the FERC tariffs and regulations. But he simply has no authority to do so, because these matters have been exclusively committed to the FERC by Congress in the FPA. Whatever the AG's authority is to investigate unlawful trade practices or racketeering *generally*, he has no authority to investigate or regulate PGE's transaction postings or interstate wholesale electricity sales.

The AG's approach to this case boils down to this: if he can prove that PGE violated the FPA and the FERC tariffs, then he can use those violations as predicate unlawful acts under the UTPA and ORICO, and thereby collect a second recovery in state court. But this approach breaks down immediately *because the AG has no authority to investigate, let alone prosecute and prove, violations of the FPA or the FERC tariffs in this area*. The AG's investigation into this exclusively federal area is the logical precursor to any subsequent claim under the UTPA or the ORICO. Because that investigation is preempted, however, the AG's

"double remedy" strategy is doomed from the start. The AG has no authority to investigate these transactions or postings and, accordingly, his CID and investigative subpoena should be set aside.

**D.    The AG's Investigation Is Improper Because Any Claims He Might Otherwise Pursue Are Barred By The Settlement And The Doctrines Of Claim Preclusion And Judicial Estoppel.**

The AG, acting on behalf of the State of Oregon through the OPUC, has agreed to a settlement of the claims he now seeks to investigate under the UTPA and the ORICO. The AG's designee, Assistant Attorney General Jason W. Jones, signed the Offer of Settlement and the Agreement and Stipulation on behalf of the Oregon Department of Justice as Attorney for the OPUC. Thus, as a matter of simple contract law, the State of Oregon has agreed to settle the claims at issue in the EPMI docket. Because those are the same claims the AG now seeks to investigate, the AG should be precluded from doing so. Otherwise, as noted above, PGE will be subjected to undue burden and expense in responding to discovery requests concerning claims that the State has already settled.

By consenting to the settlement of the EPMI docket, the State of Oregon caused the Administrative Law Judge to Certify the Settlement to the FERC for approval under 18 C.F.R. § 385.602. 105 FERC ¶ 63,016 (Nov. 10, 2003). 18 C.F.R. § 385.602(g)(1) provides: "If comments on an offer are transmitted to the presiding officer and the presiding officer finds that the offer is not contested by any participant, the presiding officer will certify to the Commission the offer of settlement, a statement that the offer of settlement is uncontested, and any hearing record or pleadings which relate to the offer of settlement." Thus, the AG should be judicially estopped from pursuing enforcement of the CID or the Subpoena, because such enforcement would be inconsistent with the settlement of the EPMI docket at the FERC.

Under the doctrine of judicial estoppel, "a party [is precluded] from assuming a position in a judicial proceeding that is inconsistent with the position that the same party has

successfully asserted in a different judicial proceeding." *Hampton Tree Farms, Inc. v. Jewett,* 320 Or. 599, 609, 892 P.2d 683, 689 (1995). It does not matter that plaintiff's prior position was made in the context of an administrative proceeding. *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 604 (9th Cir. 1996). As the Ninth Circuit explained: "Unsurprisingly given its name, judicial estoppel is often articulated as applying to 'judicial' proceedings. However, many cases have applied the doctrine where the prior statement was made in an administrative proceeding, and we are not aware of any case refusing to apply the doctrine because the prior proceeding was administrative rather than judicial." *Id.* [10] Where a party takes a position that causes a tribunal to take some action in reliance on that statement to the benefit of the party, that party may be judicially estopped from taking an inconsistent position in a subsequent judicial proceeding. *Id.* at 600-01; *Hampton Tree Farms,* 320 Or. at 611, 682 P.2d at 690. Because the rule is designed to preserve the integrity of the court, rather than the litigants, a party seeking to assert judicial estoppel need not establish detrimental reliance. *Hampton Tree Farms,* 320 Or. at 612, 682 P.2d at 691; *see also Hamilton v. State Farm Fire & Cas. Co., supra,* 270 F.3d at 782, 785.

In this case, the AG consented to and participated in the settlement of the EPMI docket. The State of Oregon obtained a benefit in the form of $800,000 in rate relief for PGE's Oregon customers. Seeking to investigate and possibly pursue other claims against PGE for the same conduct that he agreed to settle is inconsistent with settlement of those claims. By participating in the settlement, the State of Oregon accepted that the FERC has jurisdiction over the transactions in question. As noted, "if the FERC has jurisdiction over a subject, the states cannot have jurisdiction over the same subject." *Duke Energy,* 267 F.3d at 1057. Because that

---

[10] The proceedings before the Administrative Law Judge are essentially no different than judicial proceedings in court. The parties filed pleadings setting forth claims and defenses, they participated in extensive discovery, they submitted evidence and would ultimately have tried the claims at issue had they not reached an agreement. Moreover, there is no lesser need to preserve the integrity of this Court because the prior proceeding was a quasi-judicial administrative proceeding rather than a court action.

Page 20 - **DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH CID AND INVESTIGATIVE SUBPOENA AND IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

settlement and the State of Oregon's consent to it were communicated to the Administrative Law Judge, who then was obligated to certify the settlement to the FERC as uncontested, the State has caused the Administrative Law Judge presiding over the quasi-judicial administrative proceedings litigated at the FERC to certify the settlement to the FERC. Thus, all of the elements of judicial estoppel are present here and the State should be judicially estopped from pursuing its investigation of claims which it has already settled. *See Rissetto*, 94 F.3d at 604 (the plaintiff was judicially estopped from pursuing claims contrary to the statements she made to obtain a favorable settlement of her workers' compensation claim).

Additionally, the settlement approved by the FERC bars any claims that the AG might pursue based on the content of the Interrogatories and Document Requests. The settlement of the EPMI docket resulted in the resolution and termination at the FERC of the claims asserted by the State of Oregon against PGE in the EPMI docket. As a result, those claims – which concern the same conduct the AG seeks to investigate here – merge into the termination order and any claim brought subsequently against PGE by the State of Oregon will be barred by the doctrine of claim preclusion. A party who has litigated his claim or settled a claim resulting in a final judgment, on the merits or by settlement, whether in court or in an administrative tribunal is barred from relitigating those claims or litigating other claims arising from the same events or circumstances as the original claims. *See generally Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 555 (9th Cir. 2003); *Van De Hey v. U.S. Nat. Bank of Oregon*, 313 Or. 86, 829 P.2d 695 (1992).

Here, the AG is seeking to investigate claims that his office, on behalf of the State of Oregon through the OPUC, agreed should be resolved and terminated. Because that settlement served as the basis for the order approving the settlement and terminating the proceedings before the FERC, the AG's claims arising from the same facts and circumstances, whether or not formally asserted, merge into the orders of the FERC and further litigation is barred by the doctrine of claim preclusion.

### E. The AG's Investigation Is Improper Because The UTPA Is Plainly Inapplicable To The Conduct At Issue.[11]

The UTPA concerns the regulations of certain activities in connection with the purchase or sale of real estate, goods, or services "which are or may be obtained primarily for personal, family or household purposes." ORS 646.605(6). Electricity is not real estate, goods or services. And activities concerning the trading and transmission of wholesale electricity are not "primarily for personal, family or household purposes." Moreover, to the extent that the AG contends that the UTPA also covers telephone solicitations, that part of ORS 646.605(6) plainly does not apply to "[a] person or affiliate of a person whose business is regulated by the Public Utility Commission of Oregon." ORS 656.605(7)(j). As a public utility, PGE's business (but not its wholesale trading and transmission activities) are subject to regulation by the OPUC. ORS 757.005.

Moreover, and quite tellingly, the AG has not issued any regulations regarding the wholesale trading and transmission of electricity pursuant to his authority under ORS 646.608(4). Nor has the AG otherwise attempted to regulate the conduct of public utilities. That is because the Oregon legislature had adopted a comprehensive regulatory scheme for public utilities and committed that regulatory authority to the OPUC. *See* ORS chapters 756 and 757.

Finally, the UTPA, ORS 646.608, does "not apply to: (1) Conduct in compliance with the orders or rules of, or a statute administered by a federal, state or local government agency." ORS 646.612(1). In this case, PGE's wholesale trading and transmission of electricity is exclusively regulated by the FERC. PGE's retail operations are regulated by the OPUC. In either case, the AG has no authority to regulate here under the UTPA.

---

[11] As discussed above in section IV.A, *supra*, PGE acknowledges that *Vendall* likely precludes this Court from considering the argument in this section IV.E, which is based solely on state law. Nevertheless, PGE raises the argument here to preserve it in the event that state law is found to be applicable here and/or *Vendall* is ultimately overturned. By making this argument, PGE does not concede that state law is applicable in any respect.

# V. CONCLUSION

For the foregoing reasons, PGE respectfully requests that the Court enter an order (1) denying the AG's motion and discharging the Order to Show Cause, and (2) granting a Protective Order setting aside the AG's CID and Subpoena and precluding the discovery sought by the AG under Fed. R. Civ. P. 26.

DATED this 15th day of January, 2004.

TONKON TORP LLP

By _____

**William F. Martson, Jr., OSB #72163**
Direct Dial:  (503) 802-2005
Direct Fax:  (503) 972-3705
E-Mail:  rick@tonkon.com
**Steven M. Wilker, OSB # 91188**
Direct Dial:  (503) 802-2040
Direct Fax:  (503) 972-3740
E-Mail:  steven@tonkon.com
**Paul W. Conable, OSB #97536**
Direct Dial:  (503) 802-2188
Direct Fax:  (503) 972-3888
E-Mail:  paul@tonkon.com

Of Attorneys for Defendant
Portland General Electric Company

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH CIVIL INVESTIGATIVE DEMAND AND INVESTIGATIVE SUBPOENA AND IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)** on:

> Hardy Myers, Attorney General
> Stephen K. Bushong, Assistant Attorney General
> William E. Brickey, Assistant Attorney General
> Caren Rovics, Assistant Attorney General
> Oregon Department of Justice
> 1162 Court Street, N.E.
> Salem, OR 97301

☒ by electronic means through the Court's Case Management/Electronic Case File system on the date set forth below; *and*

☒ by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to each attorney's last-known address and depositing in the U.S. mail at Portland, Oregon on the date set forth below;

☐ by causing a copy thereof to be hand-delivered to said attorneys at each attorney's last-known office address on the date set forth below;

☐ by sending a copy thereof via overnight courier in a sealed, prepaid envelope, addressed to each attorney's last-known address on the date set forth below; or

☐ by faxing a copy thereof to each attorney at each attorney's last-known facsimile number on the date set forth below.

DATED this 15th day of January, 2004.

By _____
**Steven M. Wilker, OSB # 91188**

001991\00230\550866 V001

Page 1 -     CERTIFICATE OF SERVICE