HARDY MYERS
Attorney General
STEPHEN K. BUSHONG #85130
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 378-6313
Fax: (503) 378-3465
Email: stephen.bushong@state.or.us

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PORTLAND GENERAL ELECTRIC COMPANY, an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>HARDY MYERS, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF OREGON,<br><br>Defendant. | Case No. 03-1641-HA<br><br>DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS |

## INTRODUCTION

PGE and Enron are not above the law. But PGE contends that Oregon's unfair trade practices and racketeering laws—which apply to every *other* business in Oregon—do not apply to PGE and its Enron affiliates. According to PGE, those laws cannot apply to PGE and Enron because they are in the business of selling and transmitting wholesale electricity, and the Federal Energy Regulatory Commission (FERC) has exclusive regulatory authority over such businesses.

Page 1 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 1 of 12
Memo in Oppo

In PGE's view, FERC's authority even precludes a state's Attorney General from scrutinizing PGE's and Enron's business practices to determine whether further action may be warranted.

But no appellate court has ever extended the doctrine of federal preemption to such an extreme in this context. FERC's authority to regulate the interstate transmission and sale of electricity at the wholesale level should not shield PGE's and Enron's business practices from scrutiny under state laws of general applicability.

The Attorney General acknowledges that the law on PGE's preemption theory is currently unsettled, at least until the Ninth Circuit decides the California case that is currently pending in that court. This court may not need to decide the merits of PGE's preemption theory because federal jurisdiction will be barred by the *Younger* abstention doctrine.[1] PGE attempts to avoid *Younger* abstention by arguing that Oregon courts may not consider any defenses to enforcement of a civil investigative demand (CID) or investigative subpoena. PGE is wrong. PGE is also incorrect when it suggests that the parties intended to resolve the Attorney General's investigation when Oregon's Public Utilities Commission (PUC) signed the Settlement Agreement in the FERC proceedings. That suggestion is refuted by the Settlement Agreement itself. The Attorney General's motion to dismiss should be granted.

## ARGUMENT

**I. The dispute over federal preemption of state law *claims* is not ripe.**

PGE mischaracterizes the Attorney General's position on ripeness. The Attorney General explained in his opening memorandum that he is asserting ripeness only to a limited extent. Specifically, the Attorney General contends that ripeness bars PGE's declaratory judgment action only "[t]o the extent PGE is contending that UTPA, ORICO and other unasserted *claims* will be preempted or otherwise barred by federal law]."[2] But according to PGE, the Attorney

---

[1] PGE removed the pending state court proceedings to federal court on January 8, 2004, the day before the scheduled show cause hearing in Multnomah County Circuit Court. The Attorney General intends to seek a remand to state court. *Younger* abstention will again apply if that request is granted.

[2] Defendant's Memorandum in Support of Motion to Dismiss, p. 8 (emphasis added).

General's ripeness argument applies to the *investigation* as well as to any *claims* that might later be brought.[3]

That is not the Attorney General's position. The dispute over whether the *investigation* may proceed is ripe, but federal jurisdiction to resolve that dispute is barred by *Younger* abstention, as explained below. Whether federal law preempts UTPA, ORICO, or other state law *claims* that might be brought after the investigation has been completed is not ripe for resolution.

II. **Federal jurisdiction over the Attorney General's investigation is barred by *Younger* abstention.**

PGE contends that *Younger* abstention does not apply because PGE could not litigate its federal preemption or other defenses in the state court action brought by the Attorney General to enforce the CID and investigative subpoena. PGE is wrong. The UTPA offered PGE an opportunity to contest the legality of the CID, and ORICO offered PGE an opportunity to contest the legality the investigative subpoena.

Specifically, under ORS 646.618(2), PGE could have sought to set aside the CID for "good cause." Presumably, federal preemption and the other defenses PGE asserts—if legally applicable—would constitute "good cause" to set aside the CID. Similarly, ORS 166.730(3) authorizes the enforcement of the ORICO investigative subpoena if PGE failed to obey the subpoena "without lawful excuse." Again, PGE presumably could have litigated in the state court enforcement proceedings whether federal preemption or other asserted defenses constitutes a "lawful excuse" for failing to comply with the subpoena.

Thus, PGE only argument on abstention is refuted by the governing Oregon statutes. PGE's only response is to suggest that the Oregon Supreme Court "announced" a contrary rule

---

[3] PGE states: "According to the AG, PGE may not seek a declaration that this CID and investigative subpoena are unlawful because, at the end of the day, the AG might decide not to charge PGE under ORICO or the UTPA." PGE Memorandum in Opposition at 8.

Page 3 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 3 of 12
Memo in Oppo

"at the urging of then-Attorney General Kulongoski" in *Vendall Marketing Corp. v. DOJ.*[4] PGE is wrong on both accounts.

First, the Oregon Supreme Court did not "announce" in *Vendall* that substantive defenses to a CID could not be raised in an action to enforce the compliance with CID. Rather, the court in *Vendall* merely held that the Attorney General "need not make a threshold showing at the investigative demand stage that the recipient of the investigative demand, or that the entity under investigation" engaged in acts covered the UTPA.[5] That does not mean that the recipient cannot raise defenses—including federal preemption—to the enforcement of the investigative demand as expressly permitted by the statute.

Second, then-Attorney General Kulongoski did not "urge" the Oregon Supreme Court to adopt a rule that would preclude a CID recipient from raising legal defenses. In fact, the Attorney General did not even file a brief in the Oregon Supreme Court in *Vendall*. The only appellate brief filed by the Attorney General in that case was filed in the Court of Appeals. The argument in that brief was that the "trial court correctly denied Vendall's petition to set aside the department's investigative demand."[6] The Attorney General did *not* argue that Vendall could not assert any legal defenses to the investigative demand.

PGE is similarly mistaken when it suggest that the Attorney General advanced that position in *State ex rel Kulongoski v. Cunning*[7] and *Little v. Oregon Dept. of Justice.*[8] In *Cunning*, the Court of Appeals agreed with the Attorney General that (1) the defense raised in opposition to a CID *failed on the merits*; and (2) the Attorney General was not required—under

---

[4] PGE's Memorandum in Opposition to Motion to Dismiss at 10, citing *Vendall Marketing Corp. v. DOJ*, 318 Or. 189, 194-195, 863 P.2d 1263 (1993).

[5] *Vendall* 318 Or. at 195.

[6] Oregon Briefs 5137 (1993).

[7] *State ex rel. Kulongoski v. Cunning*, 139 Or. App. 515, 517, 912 P.2d 958 (1996).

[8] *Little v. Oregon Dept. of Justice*, 130 Or. App. 668, 676, 883 P.2d 272, *rev. denied*, 320 Or. 492 (1994).

Page 4 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 4 of 12
Memo in Oppo

*Vendall*—to make a threshold showing that the UTPA applied to the conduct at issue. The AG did not argue in *Cunning* that no defenses could be raised in response to the CID.

Similarly, the Court of Appeals in *Little* addressed the *merits* of an attorney-client privilege defense asserted in response to a CID.[9] The court did not hold—nor did the Attorney General urge—that such a defense could not be raised in those proceedings. The *Little* court also held—applying *Vendall*—that the Attorney General was not required "to make a showing of probable cause before issuing CIDs."[10] Again, that does not mean that defenses to the CID could not be litigated.

In short, the Attorney General has *never* advanced the proposition that PGE attributes to him in arguing for judicial estoppel. Under the governing statutes, PGE could have asserted its federal defenses in state court as a basis for contending that it had "good cause" or a "lawful excuse" for its refusal to comply with the CID and investigative subpoena. There is no Oregon case holding otherwise. Thus, *Younger* abstention applies under the square holding of *American Consumer Publishing v. Margosian.*[11]

PGE's attempt to distinguish that case misses the mark. There is only one difference between this case and *Margosian*. In *Margosian*, the Attorney General filed a UTPA complaint in state court shortly after American Consumer Publishing filed its declaratory judgment action in federal court. In this case, the Attorney General filed an action in state court to enforce its CID and investigative subpoena, but the Attorney General has not yet filed any UTPA or ORICO claims. That is a meaningless difference because in both instances, there were ongoing state proceedings which gave the federal plaintiffs an opportunity to raise its federal defenses. Nothing more is required for *Younger* abstention to apply.

---

[9] *Little*, 130 Or. App. at 674 (rejecting argument that "the attorney-client privilege protects [the requested] information from disclosure").

[10] *Id.* at 675.

[11] *American Consumer Publishing v. Margosian*, 349 F.3d 1122 (9th Cir. 2003).

Page 5 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 5 of 12
Memo in Oppo

PGE's removal of the Attorney General's enforcement action may delay the dismissal of this action on the basis of *Younger* abstention. The Attorney General believes that removal was improper because the enforcement action arises solely under state law, and federal jurisdiction over those proceedings is barred by the Eleventh Amendment. This court should stay any decision on the *Younger* abstention issue until the Attorney General's motion to remand the enforcement action is resolved. If the enforcement action is remanded, this case should then be dismissed under the *Younger* abstention doctrine.

### III. The Attorney General's investigation is not preempted by the FPA.

PGE argues that general principles of "field" and "conflict" preemption preclude the Attorney General from conducting his investigation. But whether the FPA broadly preempts all state laws of general applicability – including the UTPA and ORICO – is currently unresolved. The Supreme Court and Courts of Appeals have not yet decided that issue. Oregon explained in its opening brief – and in the amicus brief it joined in the Ninth Circuit – why state laws of general applicability should not be preempted under the general preemption principles previously articulated by the Supreme Court. And in Oregon's view, that conclusion is certainly *implied* by prior Supreme Court cases like *Schneidewind v. ANR Pipeline Company*[12] (Court assumed that state "blue sky" securities laws apply to public utilities regulated by FERC); *Otter Tail Power Company v. United States*[13] (Court concluded that antitrust laws do not inherently conflict with the FPA); and *Montana-Dakota Util. Co. v. Northwestern P.S.C.*[14] (Court assumed that common law fraud and deceit claims could be maintained against public utilities).

PGE disagrees. It contends that the Attorney General's investigation must be preempted because the Attorney General "is attempting to regulate wholesale interstate electricity sales."[15] The short answer to that argument is that the Attorney General is not attempting to *regulate*

---

[12] *Schneidewind v. ANR Pipeline Company*, 485 U.S. 293, 308, n. 11 (1988).

[13] *Otter Tail Power Company v. United States*, 410 U.S. 366, 374 (1973).

[14] *Montana-Dakota Util. Co. v. Northwestern P.S.C.*, 341 U.S. 247, 250-253 (1950).

[15] PGE's Memorandum in Opposition at 17.

Page 6 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 6 of 12
Memo in Oppo

anything; he is attempting to *investigate* improper business practices. That investigation seeks to uncover the details of unfair, deceptive and potentially fraudulent business practices. Because PGE and Enron are in the electricity business, the Attorney General's investigation necessarily includes the details of practices – like Enron's "Death Star" scheme – that involved the transmission and sale of electricity. But the fact that PGE and Enron happen to be in the electricity business does not transform an *investigation* of suspect business practices into an attempted "regulation of wholesale interstate electricity sales." Indeed, it is possible that the investigation could result in racketeering or other claims against *individuals*. Such claims could not be the equivalent of "regulating" the wholesale electricity business.

PGE attempts to bolster its preemption argument by labeling the Attorney General's investigation a "powerful new tool" and a "new remedial scheme."[16] But there is nothing "new" about a state's Attorney General conducting an investigation into unfair, deceptive and possibly fraudulent business practices under state laws like the UTPA and ORICO. It is "new" only in the sense that the investigation seeks information from companies that happen to be in the electricity business. In the past, such an investigation may not have been necessary, but evidence of PGE's involvement in Enron's suspect dealings have led the Attorney General to conclude that an investigation is now warranted.

PGE offers three other arguments on the preemption issue. First, PGE argues that the district court in *California ex rel Lockyer v. Mirant Corp.*[17] "specifically rejected" the argument that is the "centerpiece" of the Attorney General's position.[18] It is true that the *Mirant* court held that California's unfair competition claims are preempted by the FPA, as the Attorney General acknowledged in his opening memorandum. But the district court's ruling was made without the benefit of the arguments presented in the amicus brief filed by the states of Washington and

---

[16] PGE's Memorandum in Opposition at 19.

[17] *California ex rel Lockyer v. Mirant Corp.*, 266 F.Supp.2d 1046 (N.D. Cal. 2003)

[18] PGE's Memorandum in Opposition at 16.

Page 7 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 7 of 12
Memo in Oppo

Oregon in the Ninth Circuit. The district court rejected California's arguments, but it did not reject—because it did not consider—the arguments made by Washington and Oregon on appeal. The California district court's conclusion is not binding on this court, and it should be adopted in this case.

Second, PGE argues that the Attorney General's position "was also rejected by the Ninth Circuit in *TANC*[.]"[19] That is not so. In *TANC*, the Ninth Circuit – applying an actual conflict analysis – rejected the plaintiff's attempt to utilize state tort law to "undo" FERC's approval of an electricity transmission "intertie" among three states. The *TANC* court did not "reject" the proposition that a state attorney general can conduct an investigation of unfair, deceptive and possibly fraudulent business practices under laws of general applicability like the UTPA and ORICO notwithstanding FERC's regulatory authority under the FPA. Unlike the *TANC* plaintiff, the Attorney General is *not* seeking to "undo" anything that was previously decided by FERC. He *is* seeking to conduct an investigation into suspect dealings involving PGE and Enron. *TANC* does not hold that such an investigation is preempted.

PGE's third argument is that the FPA preempts any *remedies* that the Attorney General might pursue under the UTPA and ORICO. But the question is whether the *investigation* is preempted, not whether the *remedies* set forth in the UTPA and ORICO might be preempted if the Attorney General decides to pursue them against PGE, Enron, or any individuals. Moreover, the appellate courts have not yet decided whether state law remedies for unfair, deceptive and fraudulent business practices are preempted by the FPA.[20] The Ninth Circuit may decide that issue in *Mirant* in the near future. In the meantime, since the Attorney General is not yet seeking to recover any UTPA, ORICO or other remedies from PGE, the court should conclude that the Attorney General's investigation is not preempted.

---

[19] PGE's Memorandum in Opposition at 16, citing *Transmission Agency of Northern Cal. v. Sierra Pacific Co.*, 295 F.3d 918, 929 (9th Cir. 2002). (*TANC*).

[20] The cases cited by PGE on pages 19-20 of its Memorandum in Opposition only discuss general principles in completely different contexts. Those cases do not apply here.

Page 8 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 8 of 12
Memo in Oppo

## IV. The Attorney General's investigation is not barred by claim preclusion or judicial estoppel.

PGE does not dispute the Attorney General's point that claim preclusion and judicial estoppel depend upon the parties' intent in entering into the settlement agreement in the FERC proceedings. Rather, PGE contends that the Attorney General effectively manifested an intent to settle any UTPA or ORICO claims when the Oregon Public Utilities Commission (PUC) – represented by the Oregon Attorney General – joined in the settlement agreement that was ultimately approved by FERC. That argument is refuted by the settlement agreement itself.

The settlement agreement reserves claims that were not expressly described in the agreement. Claims under the UTPA and ORICO based on unfair, deceptive and possibly fraudulent business practices engaged in by PGE and/or Enron are *not* expressly described in the agreement. Thus, the claims are reserved.

That conclusion is supported by the fact that unfair business practice claims by the California Attorney General *are* expressly described in the settlement agreement. In other words the California Attorney General expressly agreed to settle his claims; the Oregon Attorney General did not. Paragraph 14 of the agreement states that it resolves "other existing cases" between the California Attorney General and PGE, citing the specific cases and "the pending non-public investigation by the California Attorney General."[21]

There is no similar provision describing unfair business practice claims by the Oregon Attorney General or any investigation by the Oregon Attorney General. If the parties really intended to resolve such claims and preclude a further investigation, surely they would have included a provision to that effect in the settlement agreement, as they did with respect to California Attorney General's investigation.[22]

---

[21] Settlement Agreement, ¶ 14, Complaint, Ex. A, pp. 25-26.

[22] The negotiations that led to the settlement – in which PGE actively participated – confirm that, in fact, the parties never intended to resolve the Oregon Attorney General's investigation. PGE is well aware of the fact that the California Attorney General specifically agreed to settle any unfair competition claim that California might pursue, but the Oregon Attorney General's office specifically *declined* to settle Oregon's UTPA and ORICO claims. While these facts are not

Page 9 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 9 of 12
Memo in Oppo

Because the parties did not intend to settle any UTPA, ORICO or other claims that the Attorney General might decide to pursue or preclude the Attorney General from proceeding with his investigation, the doctrines of claim preclusion and judicial estoppel do not apply, for all the reasons set forth in Oregon's opening memorandum.

## CONCLUSION

When the Attorney General suspects that a business has engaged in unfair, deceptive or fraudulent practices in Oregon, the Attorney General is authorized by Oregon law to investigate. No company wants to have its business practices scrutinized by the Attorney General. Target companies sometimes claim to be innocent victims of circumstance, protesting that the investigation is "burdensome" or amounts to "harassment". PGE is no different in that respect.

The only thing that makes PGE different from other companies that have been investigated by the Attorney General is the fact that PGE – and its Enron affiliates – are engaged in the business of transmitting and selling electricity. That happenstance does not shield PGE's business practices from public scrutiny. But that is precisely what PGE seeks to accomplish in this declaratory judgment action. This court should not extend the federal preemption doctrine to that extreme. Thus, PGE's claims fail as a matter of law. In any event, the *Younger* abstention doctrine precludes this court from interfering with the enforcement proceedings brought by the Attorney General in state court.

---

presently before the Court on the pending motion to dismiss, Oregon is prepared to submit testimony to that effect if the Court finds that the settlement agreement is ambiguous, making it necessary for the Court to consider additional evidence of the parties' intent.

Page 10 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIII6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 10 of 12
Memo in Oppo

Accordingly, defendant's motion to dismiss should be granted, either on the basis of *Younger* abstention after the enforcement action is remanded to state court, or because PGE's claims fail as a matter of law.

DATED this 12th day of January, 2004.

Respectfully submitted,

HARDY MYERS
Attorney General

*/s/ Stephen K. Bushong*
STEPHEN K. BUSHONG #85130
Attorney-in-Charge
Trial Attorney
Of Attorneys for Defendant
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Page 11 - DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SKB/cjw/TRIH6853.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

Exhibit 2
Page 11 of 12
Memo in Oppo

## CERTIFICATE OF SERVICE

I certify that on January 12, 2004, I served the foregoing DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS upon the parties hereto by the method indicated below, and addressed to the following:

William F. Martson, Jr.  
Steven M. Wilker  
Paul W. Conable  
TONKON TORP LLP  
888 SW Fifth Avenue, Ste. 1600  
Portland, Oregon 97204-2099  

\_\_\_ HAND DELIVER  
_X_ U.S. MAIL  
\_\_\_ OVERNIGHT MAIL  
\_\_\_ TELECOPY (FAX)  
\_\_\_ E-MAIL  
_X_ E-FILE  

/s/ Stephen K. Bushong  
STEPHEN K. BUSHONG #85130  
Attorney-in-Charge  
Trial Attorney  
Of Attorneys for Defendant  
1162 Court Street NE  
Salem, OR 97301-4096  
Telephone: (503) 378-6313  

Page 1 - CERTIFICATE OF SERVICE  
SKB/cjw/TRIH4907.DOC  

Department of Justice  
1162 Court Street NE  
Salem, OR 97301-4096  
(503) 378-6313  

Exhibit 2  
Page 12 of 12  
Memo in Oppo